STATE of Missouri, Respondent,

v.

Gordon Henry TOMPKINS, Appellant.

No. 44333.

Supreme Court of Missouri.

Division No. 2.

Feb. 14, 1955.

Motion for Rehearing or to Transfer
to Court en Banc Denied
March 14, 1955.

Motion to Set Aside Order Denying Motion
for Rehearing or to Transfer to Court
en Banc Stricken April 11, 1955.

Eugene V. Krell, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Arthur M. O'Keefe, Asst. Atty. Gen., for respondent.

TIPTON, Judge.

In the circuit court of the city of St. Louis, the appellant was convicted of forcible rape and his punishment was assessed at twenty-five years' imprisonment in the penitentiary. From that judgment and sentence he has duly appealed.

The evidence on behalf of the state shows that at about 7:45 p. m. of Sunday, July 26, 1953, the prosecutrix, Nancy Paxton, 68 years old, went into a tavern called the Little Gam located at 3673 South Broadway in the city of St. Louis, and ordered a beer. Shortly thereafter she asked the waitress if she had any snuff.

The waitress answered "No," and then asked Mrs. Paxton if she was from the south. The prosecutrix stated that she was from Hayti, in southeast Missouri. The appellant, who was nearby, stated that he was from Hayti, Caruthersville and Sikeston. A conversation followed between the prosecutrix, appellant and another man. They drank a beer.

The prosecutrix testified that about forty-five minutes after she entered this tavern the appellant asked if she wanted to meet his sister, to which she answered in the negative; she further testified that appellant took her by the arm and forced her to the home of Mrs. Mae Goetter, at 3619 South Broadway, where he roomed. She testified he shoved her up to his room on the third floor. There was a restaurant on the first floor of this building and Mrs. Goetter occupied the second floor as her home. Mrs. Goetter was not at home at the time, but was at a picture show with her family.

After prosecutrix and appellant reached his room on the third floor he locked the door, took off his clothes and stripped her of her clothing. He shoved her onto the bed and proceeded to have intercourse with her. She testified that during this time she was fighting and scratching, trying to get loose; in other words, that he forcibly raped her. The appellant then unlocked the door and the prosecutrix dressed and left the house. Blood was found on the floor of appellant's room, outside his door, on the stairs, on the floor downstairs and in the areaway.

As she came out of the house she saw a man and asked him to call the police; she told this man that she had been assaulted, robbed and raped. Evidently, this man called the police as policemen in a car found prosecutrix not far from the place where appellant roomed. When the police found prosecutrix she was covered with blood from the waist down. She was taken to the city hospital where she was found to be suffering from first degree lacerations of the vagina and second degree lacerations of the perineum, which lacerations required stitches to be taken.

The state introduced the garments worn by the prosecutrix on the night in question as well as the sheet and blanket that were on appellant's bed. All these exhibits showed blood stains of group O M. The sheet also showed seminal stains.

The appellant took the stand in his own behalf. He testified that he met prosecutrix at the tavern; that he drank beer with her and two other persons. About 8:30 he left the tavern and prosecutrix was standing outside of the tavern. He told her he was going home to supper and asked her if she wanted to go with him. She went with him to 3619 South Broadway and when she arrived there she said, "You don't live here, do you?" He told her that he lived on the third floor and he was going up to change shirts and asked her if she wanted to go too. She said, "Why not?" He further testified that after they got to his room she undressed herself and lay down on the bed. He testified that with her consent he had intercourse with her. While in this act he testified that he felt something "different than I ever felt in my life." He looked down at himself and saw blood on himself and on the bed. He told her she would have to get up and go. He got up, washed himself and changed the sheet. In the meantime the prosecutrix left.

The appellant contends that his motion for a directed verdict of acquittal should have been sustained by the trial court. He bases this contention on an assumption that prosecutrix' testimony is contrary to human experience, and the further fact that the testimony of the prosecutrix was not corroborated.

■ The jury may not have believed that prosecutrix was forced from the tavern to the third floor of 3619 South Broadway to appellant's room. But since appellant admits that she was there, it is immaterial just how she got there. The rule is that "The jury may believe all of the testimony of any witness or none of it, or may accept it in part or reject it in part, just as it finds same to be true or false when considered in relation to the other testimony and the facts and circumstances in the case." Gould v. Chicago, B. & O. R. Co., 315 Mo. 713, 290 S.W. 135, loc. cit. 138; State v. Bowman, 272 Mo. 491, 199 S.W. 161.

We think prosecutrix' testimony was corroborated. The appellant and prosecutrix were seen together in the tavern, as testified to by witness Marie Heuer, the waitress in the Little Gam Tavern, and it can be inferred from her testimony that both left the tavern about the same time. Prosecutrix called for the police immediately after she left the house where the appellant roomed. The police received the message and soon found her at Broadway and Zepp; and one of the police officers testified that she was very emotional, nervous, and was in a mass of blood from her waist down. Her legs and shoes also had blood on them.

Dr. Cora Au, a physician at the city hospital where the prosecutrix was taken by the police, testified that she had to take stitches in both the vagina and the perineum to repair the lacerations. This witness further testified that it would take a fall "upon a sharp object" or great force to cause the prosecutrix to have lacerations of the perineum.

Police Officer William Schaeffer testified that he helped arrest the appellant, and that when appellant changed his clothes at the police station he saw scratches on the base of his neck, on his right shoulder, on the front part of his body and on the right shin.

Dr. R. H. B. Gradwohl, director of the police laboratory, testified that he made an examination of certain exhibits of the state, and that he found seminal stains on appellant's trousers; that he found seminal and blood stains on the sheet and blanket; that the blood of both prosecutrix and appellant was tested, and both belonged to group O M, and that is the blood type which this witness found on the exhibits.

Appellant, in a written statement and on the witness stand, corroborated prosecutrix as to the act of intercourse, but stated that the act of intercourse was with her consent.

We have said that in a forcible rape case where the prosecutrix is a mature woman and the state's evidence is weak, there should be corroboration, State v. Thomas, 351 Mo. 804, 818(6), 174 S.W.2d 337, 345(13); State v. Marshall, 354 Mo. 312, 189 S.W.2d 301, loc. cit. 304, and we think the foregoing evidence corroborated the prosecutrix. It was for the jury to say whether this act of intercourse with prosecutrix was with her consent. When we consider that prosecutrix was 68 years old and had been an alcoholic, the jury could have found from her testimony that she had resisted the attack made upon her to the utmost of strength. State v. Cardello, Mo. Sup., 130 S.W.2d 498. We hold that the court properly overruled appellant's motion for a directed verdict.

Appellant contends that "the trial court erred because it failed to insure justice by declaring a mistrial upon its own motion when state's counsel improperly questioned jury upon voir dire." That part of the voir dire examination which the appellant contends was erroneous concerned questions dealing with the death penalty. Evidently, the appellant is trying to invoke rule 3.27 of our civil rules, 42 V.A.M.S. We have held in State v. Stidham, Mo.Sup., 258 S.W.2d 620 and in State v. Davis, Mo. Sup., 251 S.W.2d 610, that this rule does not apply in criminal cases. Moreover, there were no objections to the voir dire examination and, therefore, there is nothing before us for review. Further, the jury did not return a death verdict. We, therefore, fail to see wherein the appellant was prejudiced.

Appellant contends that the court erred in sustaining the state's objection to a statement of appellant's counsel on voir dire examination. Appellant's counsel stated that "criminal intent, the court will instruct you, is an essential element to prove." This was a forcible rape case, and if the evidence showed that there was carnal knowledge, force and the commission of the act, no intent is requisite other than that evidenced by the doing of the acts constituting the offense. 75 C.J.S., Rape, § 9, p. 471, State v. Lebo, 339 Mo. 960, 98 S.W.2d 695. We hold that the trial court properly sustained the state's objection.

The appellant, in his brief, says that the trial court erred in overruling his objection to "unnecessary parading of evidence exhibits and unnecessary corroboration, whereby the jury became prejudiced, incensed and inflamed."

Officer Virgil Kleine had identified the shirt, pants, shorts and shoes that had been taken from appellant after he was arrested; also a sheet and blanket that had been taken from the building where appellant roomed. When Officer Raymond Casatta was on the witness stand he was asked if he was present when the clothing was taken off appellant. The appellant objected to this question for the reason "that this is corroboration and using two officers for the purpose of taking the stuff to the laboratory is unnecessary parading of the evidence."

Both Kleine and Casatta were present when the clothing that appellant was wearing was taken off him, and both officers marked these exhibits with their initials.

"But even if the exhibits were purely cumulative, that is not of itself any reason why these exhibits should not have been admitted. It is within the sound judicial discretion of the trial court as to where cumulative testimony shall stop. In criminal cases and especially capital cases, this discretion should be cautiously exercised upon issues that are directly involved, especially where the cumulative testimony is more definite and of a circumstantial character that tends to prove or disprove the fact in dispute than was shown by the other testimony. Hall v. State, 64 Ark. 121, 40 S.W. 578." State v. Harris, 334 Mo. 38, 64 S.W.2d 256, loc. cit. 258.

Of course, if two or more witnesses testify about exhibits, it may be necessary to have these exhibits before the jury more than once. We think this evidence tended to prove the state's case, even if it were cumulative. The objection did not contain any statement to the effect that the jury would become incensed and in-

flamed. Therefore, that part of the assignment of error is not before us.

■ There are other assignments of error with reference to the evidence but these points are not set forth in detail and with particularity in appellant's motion for a new trial, as required by our criminal rule 27.20. See, also, Section 547.030 RSMo 1949, V.A.M.S. These assignments of error relating to the evidence concerned immaterial or collateral matters which are within the sound discretion of the trial court, even if there had been compliance with rule 27.20.

■ In his brief appellant states that there were "material and vital rulings not preserved in the record." The record shows the following stipulation: "It is hereby stipulated and agreed by and between the parties hereto, by their respective counsel, that the foregoing transcript correctly includes all of the record, proceedings and evidence in the above cause." Appellant's counsel signed that stipulation. Appellant is estopped by the stipulation to now contend that it is not correct. Moreover, "It is the duty of appellant in a case such as this to furnish a full transcript of the record including the judgment and sentence. Sections 547.110, 547.120 RSMo 1949, V.A.M.S." State v. Skaggs, Mo.Sup., 248 S.W.2d 635, loc. cit. 638. In our review we are confined to the transcript filed in this court.

■ Appellant also contends that the offer of proof by witness Joseph Beck, for appellant, was improperly excluded by the trial judge. However, a reading of the transcript does not disclose that any person named Joseph Beck testified, offered to testify or was ever placed upon the witness stand. Under these circumstances there is nothing for the court to review under this assignment.

■ Appellant complains that in the opening statement the assistant circuit attorney stated the state would prove that the prosecutrix, prior to entering the tavern, had dinner with her son, had a birthday card in her possession and window shopped. There was no objection made to this statement or any similar statement. Therefore, there is nothing for us to review.

■■ The appellant contends that the trial court erred in giving and refusing instructions. It is to be remembered that appellant was charged with rape. Instruction number 1 and instruction number 3 defined what constitutes rape. Instruction number 2 was on assault with intent to rape. Nowhere in his brief does the appellant attempt to show that these instructions were erroneous. One of the appellant's refused instructions stated that "The court instructs the jury that in this case the defendant, Gordon H. Tompkins is charged with rape, assault with intent to do great bodily harm, and robbery in the first degree. * * *" Since the information did not charge robbery this instruction was properly refused. The other refused instruction mentioned in appellant's brief is found at page 330 of the record. The appellant admits that this instruction "is essentially the context of instructions 1 and 3" given on behalf of the state. We fail to see wherein the refusal of this instruction was error, since the trial court had already instructed on this issue.

Appellant next contends "that the trial court erred in that it failed to insure justice by declaring a mistrial upon its own motion when state's counsel argued improperly" in his closing argument. We have already ruled that the plain errors rule applies only in civil cases. The record fails to show any objection to the state's closing argument. Therefore, we are precluded from reviewing this assignment of error.

■ Appellant contends in his motion for a new trial "that the verdict of the jury clearly reflects passion and prejudice and the court erred in permitting conviction to stand." The jury found the appellant "guilty of rape and assessed his punishment at twenty-five years in the penitentiary." This is within the limits prescribed by Section 559.260 RSMo 1949, V.A.M.S. This fact alone would not prove prejudice. State v. Burks, Mo.Sup., 257 S.W.2d 919.

Appellant contends that the trial court erred in that it failed to sustain appellant's motion for a new trial on the ground of newly discovered evidence.

 "The requirements for granting a new trial on this ground are thus stated, [State v. Speritus] 191 Mo. [24] loc. cit. 41, 90 S.W. [459] loc. cit. 464, in the Speritus case: 'It devolved upon the defendant to show: First, that the evidence first came to his knowledge since the trial; second, that it was not owing to want of due diligence that it did not come sooner; third, that it was so material that it would probably produce a different result if the new trial were granted; fourth, that it was not merely cumulative; fifth, that the object of the testimony was not merely to impeach the character or credit of a witness; sixth, the affidavit of the witness himself should be produced, or its absence accounted for.' See also State v. Smith, Mo.Sup., 247 S.W. 154; State v. Hewitt, Mo.Sup., 259 S.W. 773; State v. Jones, Mo.Sup., 221 S.W.2d 137; State v. Stroud, 362 Mo. 124, 240 S.W. 2d 111." State v. Brotherton, Mo.Sup., 266 S.W.2d 712, l. c. 718.

The first evidence that appellant contends is newly discovered evidence was state's exhibit 17, which was an undershirt. Appellant states in his motion for a new trial that this exhibit was not examined for anything other than blood and semen. He contends it showed that prosecutrix wiped her face on this article and it showed that "pancake make-up" was thoroughly visible. This make-up being visible to the eye, therefore, appellant evidently knew about it when this exhibit was offered in evidence.

We are at a loss to understand appellant's contention of newly discovered evidence in reference to witness Dr. Cora Au. Appellant cross-examined this witness. If he were surprised by this witness, we find no objection to her testifying. Moreover, we do not find this point in appellant's motion for a new trial. This assignment is not before us.

From what we have said, it follows that the judgment should be affirmed. It is so ordered.

ELLISON, P. J., LEEDY, J., and BROADDUS, Special Judge, concur.