STATE of Missouri, Plaintiff-Respondent,

v.

Gary E. GIBSON, Defendant-Appellant.

No. WD 32158.

Missouri Court of Appeals, Western District.

Oct. 13, 1981.

Kranitz & Kranitz, P. C., St. Joseph, for defendant-appellant.

John Ashcroft, Atty. Gen., Jefferson City, Catheryn B. Starke, Asst. Atty. Gen., Kansas City, for plaintiff-respondent.

Before MANFORD, P. J., and DIXON and NUGENT, JJ.

DIXON, Judge.

Defendant appeals a sodomy conviction and a jury-imposed sentence of five years. The offense was charged and conviction had under § 566.060.1(2).[1]

The conviction must be reversed and remanded for error in the admission into evidence of the oral confession of the defendant after defendant had requested counsel. Two other issues raised by the defendant will likely recur on retrial: first, the competency of the victim witness; and, second, the defendant's claim that the trial court should have instructed the jury as to the lesser included offense of sexual misconduct. § 566.090.1(2).

The defendant and the mother of the nine-year-old victim were cohabiting and were the natural parents of a son. The victim was the child of an earlier marriage of the mother. On September 29, 1979, the mother was absent from the home. The nine-year-old victim related at trial an act of fellatio and an act of anal intercourse by the defendant. Sometime the next day the police interviewed the child. This was around 11 a. m. The inquiry immediately focused upon the defendant. He was arrested and taken to the police station by officers of the St. Joseph police department. He was advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), at 9:38 p. m. After defendant signed the form acknowledging the warnings and waiving his rights under *Miranda,* the officers began an interrogation. After several routine questions as to defendant's age and employment, the inquiry turned to the offense. When asked about the events of the evening before, the defendant, according to one of the officers, said, "I can't talk about it." The defendant's version of the events thereafter differs as to whether he refused to continue with the interrogation. The briefs have covered the issue of the defendant's right to interrupt the questioning at any time, but that issue need not be reached or decided. What occurred with respect to the defendant's claim of a right to counsel based upon

what the police officers testified to at the hearing on the motion to suppress is dispositive of the *Miranda* claim.

██ What occurred at the interrogation with respect to the defendant's request for counsel is best shown by verbatim excerpts from the testimony. Lt. Powell, one of the interrogators, when questioned, gave the following responses:

"Q. Lieutenant Powell, you said he did ask for an attorney?

A. Just the one time.

Q. Did you advise him of his right to an attorney after he asked for an attorney?

A. Yes; he was advised he could have an attorney if he so desired.

Q. That was the start?

A. And we advised him at that time when he asked for one, that he could have an attorney if he so desired.

Q. Who gave him the phone book?

A. I don't recall; either myself or Richard Brown, Sergeant Brown. Sergeant Brown, I believe.

\* \* \* \* \* \*

Q. After he had requested an attorney, did you go through it and advise him again of his right to an attorney?

A. Yes; that he had a right to have an attorney present if he so desired.

Q. He requested his father be allowed to come down?

A. Sir, I don't recall. I don't recall that.

Q. Did you continue to ask him questions after he had requested an attorney?

A. Yes."

Subsequently examined by the trial court, Powell said:

"Q. How many times did he tell you that he would rather not talk about it?

---

1. All statutory references are to RSMo 1978 unless otherwise noted.

A. Just twice; once when I first started with him, then the time that he asked for the attorney. We handed him the phone book and told him he could call anyone he so desired.

Q. Had he nodded his head to any of these questions before he asked for the attorney?

A. I don't recall, Judge.

Q. *Did he deny some of these things? He never did deny anythings [sic]?*

A. No, sir, he did not.

Q. What did you talk about between the time you said he asked for an attorney and he said he would rather not talk about it?

A. *Then I went ahead and ignored that. I just went ahead and asked him again.* I asked him how long he had lived with the girl's mother and—

Q. He answered these questions?

A. Yes. Then I asked him where he worked, this type of thing.

Q. *What were the questions you asked him just before he asked for a lawyer?*

A. *As I recall, we were getting into the allegations that had been made against him. That's when he said he thought maybe he should talk to a lawyer.*

Q. Did he deny any of those things before he asked for a lawyer?

A. No, sir. *He said he thought maybe he had better get a lawyer, something like that.* That's when we handed him the phone book and said call anyone you wish.

Q. *Did he at any time say he didn't want to talk to you, or did he say he just wanted to get a lawyer?*

A. I believe he said he thought maybe he ought to talk to a lawyer, or he ought to get a lawyer." (Emphasis supplied)

Brown, the other interrogating officer, also testified at the suppression hearing as follows:

"Q. Now, what about his asking for an attorney, Sergeant Brown; do you remember him at any time telling you he wanted to speak with an attorney?

A. Yes, I do. He asked if he could—he said, 'I think I need an attorney.' At that time we gave him a telephone book.

Q. What did he do?

A. He opened the telephone book, and I can't recall which page it was, a wrecker service or doctor that he looked up. I said, "Those are not attorneys that you are looking at there.' He said, 'I think I'll wait until morning,' or 'I'll wait until in the morning.'

Q. Did he indicate to you that he didn't want an attorney?

A. He didn't say specifically that he didn't want an attorney. He said, 'I think I'll wait until in the morning and get hold of my dad.'

Q. Did he at that point say he didn't want to talk to you any more?

A. No, he didn't.

Q. Did you continue to talk with him?

A. Yes, we did.

Q. That would be regarding the different acts which the report contained supposedly occurred to the victim in this case?

A. Yes, it did."

It should be noted at this point that the interrogation lasted over two hours and thus concluded about 11:30 p. m. The defendant has a fourth grade education acquired in a class for retarded children.

*Miranda, supra* at 474, 86 S.Ct. at 1628, says:

If the individual *states that he wants an attorney, the interrogation must cease until an attorney is present.* At that time, the individual must have an opportunity to confer with the attorney and to have him present during every subsequent questioning. *If the individual cannot obtain an attorney and he indicates*

*that he wants* one before speaking to police, *they must respect his decision to remain silent.*

(Emphasis added).

The trial court apparently believed that even if defendant had requested an attorney, he, by "responding," waived his right to remain silent and thus his claim to counsel.

*Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (May 18, 1981, official citation not available), laid to rest any doubt as to the permissibility of continued interrogation and responses from the defendant after a request for counsel. The Supreme Court said:

> Second, although we have held that after initially being advised of his *Miranda* rights, the accused may himself validly waive his rights and respond to interrogation, see *North Carolina v. Butler,* supra, [441 U.S. 369,] at 372–376, 99 S.Ct. 1755, at 1756–1759, 60 L.Ed.2d 286, the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and *we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.* We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, *is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police.*

(Emphasis supplied).

Our own Supreme Court has had occasion to speak to the ruling of the *Edwards* case, supra, *State v. Oldham,* 618 S.W.2d 647 (Mo.banc 1981), a case of custodial interrogation in which the defendant requested an attorney and the initial interrogation ceased. Thereafter, another officer undertook to question the defendant and obtained incriminating statements.

Discussing *Edwards* and particularly the quotation from *Edwards, supra,* the Supreme Court of Missouri held the statements inadmissible, saying:

> Courtroom application of the guidance and dictates of the *Edwards* case necessitates a readiness to answer two questions, *i. e.,* (1) Did the accused, after having expressed a desire for assistance of counsel, *initiate* further communication? (emphasis added) and (2) If the answer to question one is "yes" did the accused do so voluntarily, knowingly and intelligently?
>
> Suffice it to say that in the instant case there is nothing in the record suggesting that appellant initiated those further communications from which the challenged statements were taken; but, to the contrary, the opposite is clearly evident. The answer to question number one being "no," no inquiry need be made reference question number two.
>
> The trial court erred in overruling appellant's Motion to Suppress the challenged statements and for that reason the present conviction cannot stand.

*State v. Oldham, supra* at 649.

■ There can be no question that in this case the defendant claimed his *Miranda* right to counsel. Under *Edwards, supra,* and *Oldham, supra,* the only remaining question is whether defendant initiated further discussion with the police and, if so, was this done voluntarily, knowingly, and intelligently?

This record will not support a finding that the defendant initiated further discussions with the officers. In the words of one of the officers, they simply "ignored" his request for counsel and continued to question him. To hand a defendant the yellow pages after 9:30 p. m., particularly one with a fourth grade level of education, and then on the basis of his inability to cope with the problem of finding counsel, continue to question him, cannot be held to be an "initiation" by the defendant of further discussions. This is particularly true in the in-

stant case, for the officers admit that the defendant said he would "wait until morning." Whether this was to obtain counsel or to renew discussions with the officers, they were bound to "scrupulously honor" his asserted right.

Since the defendant did not initiate further discussion, no real question of knowing, intelligent, and voluntary waiver of the right to counsel exists in this case. However, the record will not support the requirements for such waiver expressed in *Edwards, supra,* 451 U.S. at 484, 101 S.Ct. at 1884, 68 L.Ed.2d at 386:

> [W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.

Not one scintilla of evidence exists of a waiver of the right to counsel except the interpretation the officers placed on defendant's inability to deal with the problem of obtaining counsel at a late evening hour. The reluctance or inability of a defendant to obtain counsel in these circumstances cannot be viewed as a waiver of the right to counsel.

The defendant also asserts on this appeal that the trial court erred in refusing to disqualify the nine-year-old victim as a witness on the motion of the defendant. As the defendant notes, § 491.060(2) provides that a witness under ten years of age is disqualified if the witness "appears incapable of receiving just impressions of the facts respecting which he is examined, or of truly relating them; . . . ." (Footnote omitted).

■ To determine the competency of a child witness, the following elements are considered:

(1) present understanding of, or intelligence to understand, on instruction, an obligation to speak the truth;

(2) sufficient mental capacity at the time of the occurrence to observe and to register such occurrence;

(3) memory sufficient to retain an independent recollection of the observations made; and

(4) capacity to translate into words the memory of such observations.

*State v. Stewart,* 596 S.W.2d 758, 759 (Mo. App.1980).

There was an extensive voir dire of the witness, both at the preliminary examination and at trial. This would ordinarily end the inquiry since the trial court rules upon the question of competency as a matter of judicial discretion. Review of that discretion is for abuse of discretion only. *State v. Robertson,* 480 S.W.2d 845 (Mo.1972).

■ The defendant, however, asserts there is such an inconsistency between the child's initial report to the police and her trial testimony as to the defendant's act of anal intercourse that she was incompetent to testify. The child did relate in the original report only an attempted anal intercourse. On trial, she explained that her statement to the police was incomplete and that she had resisted but was unable to do so successfully.

Defendant's cited quotation from *State v. Lawrence,* 566 S.W.2d 243, 246 (Mo.App. 1978), is appropriate:

> In order for contradictions and inconsistencies in a party's testimony to preclude his recovery as a matter of law they must be diametrically opposed to one another with respect to some vital question in the case [citation]; so contradictory and without explanation as to preclude reliance thereon [citation]; so self-contradictory that they rob the testimony of all probative force, [citation]; and *so glaring as to conclusively show that the party testified untruthfully one way or the other,* [citation]. Otherwise the inconsistencies in the plaintiff's testimony are for the jury to resolve.

"The determination of testimonial competency of a child rests on the whole of his testimony [*citation*], and his voir dire need not be altogether consistent before he will qualify to testify at the trial." *State v. Dayton,* 535 S.W.2d 479, 490 (Mo.App.1976).

Applying these statements to the case at hand, the inconsistency is not so compelling as to destroy the competency of the witness. Given the nature of the offense and the age of the victim, literal consistency would be suspect. The explanation given is plausible and the victim was a competent witness on the whole record.

The last issue to be considered is the claim of the defendant that the trial court erred in failing to instruct on other offenses which defendant claims are lesser included offenses of the sodomy charge under § 566.-060.

The defendant asserts that § 566.100, § 566.110, and § 566.120 defining and proscribing sexual abuse in the first, second, and third degree, are lesser-included offenses of sodomy under § 566.060. All of the sections relating to sexual abuse contain as a common element of the crime charged "sexual contact" defined in § 566.010.1(3) as follows:

(3) *"Sexual contact"* means any touching of the genitals or anus of any person, or the breast of any female person, or any such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person.

The Supreme Court has considered the question of the statute proscribing sexual abuse in the third degree in the context of the statute proscribing rape, § 566.030, *State v. Harris*, 620 S.W.2d 349 (Mo.banc 1981). In *Harris*, the victim was over the age of thirteen and thus not within the proscription of § 566.100, sexual abuse in the first degree, [victim less than twelve], nor § 566.110, sexual abuse in the second degree, [victim twelve or thirteen] years old. In rejecting the claim of defendant that he was entitled to an instruction on the crime of third degree sexual abuse, § 566.-120, which involves the same offense with a victim over thirteen, the court said:

The distinguishing feature rendering sexual abuse other than a lesser offense of rape under § 566.030 is found in the difference between sexual intercourse and sexual contact. The former means "any penetration, however slight, of a female sex organ by the male sex organ, whether or not an emission results." § 566.010.1(1), RSMo 1978. Sexual contact is "any touching of the genitals or anus of any person, or the breast of any female person, or any such touching through the clothing, *for the purpose of arousing or gratifying sexual desire of any person.*" (Emphasis added). § 566.010.1(3) RSMo 1978. Thus, as well as proscribing conduct not punishable as rape, sexual abuse in the third degree requires a mental state, as shown in the italicized portion of the referenced statute, not necessary to conviction of rape. In rape, purpose and motive are irrelevant. As stated in *State v. Tompkins*, 277 S.W.2d 587 (Mo.1955), "If the evidence showed that there was carnal knowledge, force and the commission of the act, no intent is requisite other than that evidenced by the doing of the acts constituting the offense." *Id.* at 591. Accordingly, sexual abuse in the third degree is not a lesser included offense of the crime charged.

*Harris, supra* at 355.

This would appear on the surface to control in the instant case under traditional views of sodomy which required penetration as an element of the offense as the statute still does in rape, § 566.010.1(1). The definition of deviate sexual intercourse, however, does not require penetration. Section 566.-010.1(2) reads as follows:

(2) *"Deviate sexual intercourse"* means any sexual act involving the genitals of one person and the mouth, tongue, *hand* or anus of another person;

(Emphasis added).

Some acts of deviate sexual intercourse might not involve penetration and still be within the statutory definition. By defining sexual intercourse as a "sexual act" involving the genitals of one person and the "hand" of another, a wide variety of sexual activity could be classified as deviate sexual intercourse.

Because the present definition of deviate sexual intercourse includes sexual behavior that does not include penetration, the *Harris* rationale is not applicable. A "sexual

act" in the definition of deviate sexual intercourse must imply an intent to arouse or gratify sexual desire or noncriminal behavior will be within the definition. A physician's manual examination of a patient could be within the definition of § 566.010.-1(2) unless such an intent is a part of the offense. The language "for the purpose of arousing or gratifying sexual desire" is language taken from Section 213.4 of the Model Penal Code, Part II, American Law Institute. The commentary at page 400 asserts the language was included to require a specific sexual intent and therefore exclude innocent contacts.

A distinction between certain acts which might be either deviate sexual intercourse and sexual contact under a rationale based on whether or not such acts "arouse or gratify sexual desire" is impossible. A rationale which will distinguish between the two is an explication of the meaning of "sexual intercourse" and "sexual contact" in the context of the statutes creating offenses based on the definitions.

"Sexual contact" is employed only in §§ 566.100, 566.110, and 566.120, and in each of those sections, the legislature has mandated an offense only when the defendant *subjects* another person to sexual contact. Reading § 566.100 as typical of the three sections with the definition interpolated, the section would read:

> [a] person commits ... sexual abuse ... if he *subjects* another person ... [to any touching of the genitals or anus ... or the breast of a female person or any such touching through the clothing for the purpose of arousing or gratifying sexual desire ...]

So read, the sexual abuse statute requires that the *touching be by the defendant* of a person less than twelve under § 566.100, a person twelve or thirteen years of age under § 566.110, and a nonconsensual touching of any person over fourteen years of age under § 566.120.

On the other hand, deviate sexual intercourse implies a reciprocity of action between the defendant and the victim, albeit perhaps under compulsion, and some act by the victim which either makes the victim a pathic in the traditional view of sodomy, or which requires the victim to perform some act upon the genitals or anus of the defendant.

■ So construed, the offenses of sexual abuse embraced within §§ 566.100 to 566.-120 may be, but are not necessarily, lesser included offenses under the sodomy statute, § 566.060 and the deviate sexual assault statutes, §§ 566.070 and 566.080, depending upon the evidence in the case.

■ In the instant case, the evidence does not support submission of the sexual abuse charges. The evidence in this case was of sodomy per os and per anus with the victim being in both instances the pathic and with penetration occurring. There is no evidence of any preliminary touching which, if the jury did not believe the victim's account of sodomy by penetration, would support the sexual abuse charge.

■ The defendant's claim that he was entitled to submission of an instruction under § 566.090 proscribing sexual misconduct is more easily resolved.

The defendant claims that the elements of the offense under § 566.060.1(2) sodomy and § 566.090.1(2) are identical. The defendant supports that argument by citing MAI–CR 2d 20.14.2.2 which reads:

> (As to Count _____, if) (If) you find and believe from the evidence beyond a reasonable doubt:
>
> First, that (on) (on or about) (at about [time of day or night] on) (between the hours of [times of day or night] on) [date] in the (City) (County) of _____, State of Missouri, the defendant was not married to [name of victim], and
>
> Second, that at that time and place the defendant had deviate sexual intercourse with [name of victim], and
>
> Third, that at that time [name of victim] was (fourteen) (fifteen) (fourteen or fifteen) (less than fourteen) years old,

then you will find the defendant guilty (under Count ____) of sexual misconduct (, unless you find and believe from the evidence that it is more probably true than not true that the defendant reasonably believed that [name of victim] was sixteen years old or older, as submitted in Instruction No. ____).

(However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.)

If you do find the defendant guilty (under Count ____) of sexual misconduct, you will assess and declare the punishment at imprisonment for a term fixed by you, but not to exceed one year."

Defendant says and he is correct that the elements of § 566.060.1(2) are

1. Defendant not married to victim;
2. Victim subjected to deviate sexual intercourse;
3. Victim less than fourteen years of age.

Defendant then argues that the same elements are present under MAI–CR 2d 20.14.-2.2, based on § 566.090, given the circumstance that the victim was less than fourteen years of age.

The section, 566.090, reads as follows:

1. A person commits the crime of sexual misconduct if:

. . . .

(2) He engages in deviate sexual intercourse with another person to whom he is not married and who is under the age of seventeen years; or

. . . .

2. Sexual misconduct is a class A misdemeanor.

The elements of the offense under 566.-090 are the same as those listed above as the elements of the crime of sodomy with a victim less than fourteen years of age under § 566.060.1(2). Sexual misconduct is broader than the sodomy statute as it includes fourteen and fifteen year old victims. MAI–CR 2d 20.14.2.2 includes the alternative ages, as the comments indicate, to permit submission of the defense of a reasonable belief by the defendant that a fourteen or fifteen year old victim was sixteen years of age.

In any event, the offenses are not lesser included offenses—they are identical offenses when a child under fourteen is involved. No other element than those involved in sodomy is required, and no defense based on belief as to age is permitted.

■ The definition of a lesser-included offense is generally said to be the existence within the greater offense of all the elements of the lesser offense. *Harris, supra.* This assumes that the greater offense contains some additional element justifying the greater charge and penalty.

■ But the legislature may provide that the same facts may constitute separate offenses with separate and different penalties. If this is done, it rests in the discretion of the prosecution as to which charge is to be brought. *State v. Shuls,* 329 Mo. 245, 44 S.W.2d 94 (1931); *State v. Koen,* 468 S.W.2d 625, 629 (Mo.1971). The offense of sexual misconduct under § 566.090.1(2) is not a lesser included offense under § 566.-060.1(2).

The judgment is reversed and remanded for error in the admission of the defendant's statement to the police.

NUGENT, J., concurs.

MANFORD, P. J., concurs in separate concurring opinion filed.

MANFORD, Presiding Judge, concurring.

I concur in the results reached by the majority opinion relative to the issue of the victim's competency to testify and the issue that the jury should have been instructed as to a lesser included offense of sexual misconduct.

Upon the third issue respecting the admission into evidence of appellant's oral confession, I am dubitante.