**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Wade Charles HOLMES,
Defendant-Appellant.**

**No. 43624.**

Missouri Court of Appeals,
Eastern District,
Division One.

May 3, 1983.

Motion for Rehearing and/or Transfer to
Denied July 6, 1983.

Application to Transfer Denied
Aug. 16, 1983.

John Putzel, Asst. Public Defender, Joseph W. Downey, Public Defender, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff-respondent.

STEPHAN, Judge.

Defendant appeals from jury conviction for burglary in the first degree, § 569.160, RSMo 1978, and sodomy § 566.060, RSMo 1978.[1] Defendant was sentenced as a persistent offender to fifteen years on each count, the sentences to be served consecutively. We affirm.

On the morning of November 23, 1979, at about 9:25 a.m., Ann T_____, age 18, was awakened by an intruder grabbing her head as she slept in her bed. She had been

1. Unless otherwise indicated, all statutory references herein are to the Revised Statutes of Missouri, 1978.

alone in the house, and the man (later identified by her as defendant) forced her into her sister's bedroom. The defendant instructed Ann to lie across the bed on her stomach. The defendant lifted Ann's nightgown, tore off her panties, rubbed his penis against her anus, vagina, and legs for about five minutes and ejaculated. During this act, Ann removed a ring from the assailant's hand, apparently without his knowledge. With the aid of a flashlight, defendant thereafter searched through drawers in the bedroom, which provided Ann an opportunity to observe her assailant's clothing: orange trousers, a dark suede jacket, and a black cap. She also was able to see his profile. The defendant struck Ann in the head when he saw her watching him, and then he ran from the home, limping as he left. St. Louis Police Officer George Jonas, acting on a description provided by the victim, apprehended defendant a few blocks from the victim's home. Defendant did not testify and presented no other witnesses.

 In his initial point on appeal, defendant claims that the trial court erred in overruling his motions for acquittal at the close of the state's case and after the presentation of all the evidence, as he argues that the state did not prove the common law requirement of penetration as an element of sodomy. The point is without merit. Section 566.060, supra, provides in part, "A person commits sodomy if: (1) He has deviate sexual intercourse with another person to whom he is not married, without that person's consent by the use of forcible compulsion; . . ." As used in Chapter 566, the term, " 'Deviate sexual intercourse' means any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person; . . ." § 566.010–1(2). From a reading of these statutes, it is clear that, at least since January 1, 1979, the effective date of Missouri's current criminal code, penetration is not an element of sodomy. The evidence warranted a jury finding that defendant engaged in a sexual act with the victim involving his penis and her anus which, along with the other elements relating to lack of marital relation-

ship, lack of consent and forcible compulsion, constituted "deviate sexual intercourse" and, thus, sodomy.

 Defendant argues, however, that the evidence of the corporeal contact between penis and anus, in this case, also satisfies the definition of "sexual contact" contained in § 566.010. For purposes of Chapter 566, that term is defined in § 566.-010 as "any touching of the genitals or anus of any person, or the breast of any female person, or any such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person." The definition of "sexual contact" in § 566.-010 was obviously placed there by the General Assembly to give meaning to that term as used in §§ 566.100, 566.110, 566.120, which proscribe the crimes of first, second, and third degree sexual abuse, respectively. From the similarity between the definition of "deviate sexual intercourse" and "sexual contact," defendant argues that, unless penetration is a necessary element of sodomy, then the crime of sodomy has merged with the crime of sexual abuse in its various degrees.

While we acknowledge defendant's argument as eminently resourceful, we do not accept it. All of the aforementioned sections were enacted by the General Assembly in 1977, effective January 1, 1979, as part of a comprehensive revision of the criminal code of Missouri. As such, they are in *pari materia,* are presumed to be compatible, and are accorded harmonious interpretation, if at all possible. See *State ex rel. Carlton v. Haynes,* 552 S.W.2d 710, 715[5] (Mo. banc 1977). The principle of construing statutes harmoniously when they relate to the same subject matter is all the more compelling when they are enacted at the same session of the General Assembly. See *Hull v. Baumann,* 345 Mo. 159, 131 S.W.2d 721, 725 (1939); *Farmer's Bank of Antonia v. Kostman,* 577 S.W.2d 915, 923 (Mo.App.1979); *Dillen v. Remley,* 327 S.W.2d 931, 935 (Mo.App.1959); *Combs v. Cook,* 238 Ind. 392, 151 N.E.2d 144, 147 (1958). Guided by this view, we cannot

accept defendant's argument which would inexorably lead to the conclusion that, in defining the crime of sodomy, the General Assembly abolished it as a distinct crime.[2]

■ An argument similar to the one made here was rejected in *State v. Harris,* 620 S.W.2d 349, 354–355 (Mo. banc 1981) in connection with a discussion as to whether, under the new code, sexual abuse in the third degree is a lesser included offense of rape. Holding that it is not, our Supreme Court said that, because of the definition of "sexual contact" quoted above, "sexual abuse in the third degree requires a mental state . . . not necessary to conviction of rape. In rape, purpose and motive are irrelevant." *Id.,* 355. The Western District of this Court in *State v. Gibson,* 623 S.W.2d 93, 99–100 (Mo.App.1981), stated that the *Harris* rationale does not readily apply to non-penetration sodomy cases, however, for the reason that the deviate sexual intercourse inherent in sodomy requires "a sexual act." This term, according to *Gibson,* "must imply an intent to arouse or gratify sexual desire or [else] non-criminal behavior will be within the definition . . ." of deviate sexual intercourse.[3] *Id.,* 100. Assuming that "intent to arouse or gratify sexual desire" is a necessary element of the crime of sodomy without penetration, such a finding could readily be made by the jury from the facts of this case. The victim's account of defendant's actions left no room for a conclusion that they constituted an innocent or accidental touching. Cf. *State v. Purk,* 625 S.W.2d 888, 890 (Mo.App.1981). Thus, to the extent that the crime of sodomy committed without penetration parallels the definition of sexual abuse in the first degree, the acts that warrant conviction of one might well support a conviction of the other. It does not follow, however, that the crimes have merged into one, for "the legislature may provide that the same facts may constitute separate offenses with separate and different penalties. If this is done, it rests in the discretion of the prosecution as to which charge is to be brought." *Gibson,* supra, 101.

■ What has been said of the foregoing point disposes in large measure of defendant's second point. In this point, defendant claims that the trial court erred in not "instructing down" so as to give the jury an opportunity to consider acquittal of sodomy and conviction of sexual abuse in either the first or third degree. As indicated above, the elements of sodomy without penetration and first degree sexual abuse in the context of this case are the same and, "thus, one offense is not a lesser included offense of the other." *State v. Williams,* 628 S.W.2d 947, 949 (Mo.App. 1982). With respect to the failure of the trial court to instruct on sexual abuse in the third degree, defendant notes that the difference in the two degrees is that the latter does not require a jury finding of forcible compulsion as an element of the offense. In support of his view that the instruction should have been given, defendant argues that the jury could have found that defendant's activities did not constitute "forcible compulsion." The victim's testimony on this point was clear, convincing and uncontradicted: She was awakened by an intruder in her home who grabbed her by the

---

2. Prior to enactment of the new code, sodomy was defined as, "the detestable and abominable crime against nature, committed with mankind or with beast, with the sexual organs or with the mouth . . ." § 563.230, RSMo 1969. This language, characterized by the Committee Comments as "ambiguous and outmoded," Vol. 40A, VAMS, p. 617, has been the subject of judicial rhetoric, apologia, and concern over the years. See *State v. Crawford,* 478 S.W.2d 314, 316–319 (Mo.1972); *Griffith v. State,* 504 S.W.2d 324, 326 (Mo.App.1974). We should not thwart legislative efforts to define an offense described in Blackstone's Commentaries as " 'the horrible crime not to be named among Christians,' " *Crawford,* supra, 318, and given little clarification since.

3. The Court, in *Gibson,* illustrates its point by observing that, without such an intent being implicit, "A physician's manual examination of a patient could be within the definition of § 566.010–1(2) unless such an intent is part of the offense." *Id.,* 100. Another way of stating the same principle is to observe that a manual examination performed by a physician in the course of his professional practice is simply not "a sexual act."

head, forced her into another room, tore off her undergarments, and placed his body on top of hers. As said in *Williams,* supra, the lesser offense of sexual abuse in the third degree was not within the scope of the proof, and the court did not err in refusing so to instruct.

■ Defendant next argues that the trial court erred in granting a protective order preventing defense counsel from arguing to the jury that there was no evidence offered by the prosecution of spermatozoa on the victim's panties or the defendant's trousers. This argument fails in light of the uncontradicted testimony that no search for spermatozoa was made. Nevertheless, defendant's counsel stated to the trial judge, "I can argue he [the police criminalist] didn't bother to look for it. That's lousy police work." Unless it is established that a search for evidence such as fingerprints was made, it is not error to prohibit defense argument to the effect that the state's failure to produce such evidence is significant. *State v. Rutherford,* 554 S.W.2d 584, 586 (Mo.App.1977); *State v. Woodson,* 522 S.W.2d 651, 652 (Mo.App. 1975). As noted in *Woodson,* such argument is properly excluded because it is "outside the record." In the instant case, the testimony was definite that the criminalist did not test for the presence of spermatozoa and defense argument on this point was properly excluded.

■ In his final contentions, defendant asserts that the trial court erred in refusing to grant the defense a mistrial as a result of comments made by the prosecutor during closing arguments. The first such remark concerned the lack of alibi evidence:

> The evidence in this case exceeds any burden of proof. It's unrefuted. It's unrefuted. And where is any defense witness? Where is, if this is truly a case of misidentification, where is somebody to come in and say, "Yes, I was with the defendant," or, "I just saw him"?

At a later point in his closing argument, the prosecutor commented on defendant's failure to show that the ring removed from the assailant's hand by the victim was not defendant's:

> MR. FAGEN: If that's not his ring, somebody, some acquaintance, a relative, could have come in here and said, "I've never seen him with that ring on his finger. I don't know the ring. That's not his ring. I've never seen him with that ring." Where is that witness? It's impossible because it is his ring.

Following each remark, defense counsel promptly objected and requested that a mistrial be declared. The trial judge sustained the objection and instructed the jury to disregard the statements, but denied the request for a mistrial. The defendant claims on appeal that the effect of the state's comments impermissibly shifted to defendant the burden of proving an alibi and, secondly, of proving that the ring did not belong to him. We do not agree with defendant's assessment of the effect of the prosecutor's closing remarks and, in any event, find that the trial court acted appropriately to remedy any prejudice which might have resulted from the argument. In arriving at this conclusion, we note that the arguments could be seen as responsive to the position taken by defense counsel in his cross-examination of the victim, that her identification of defendant was mistaken, and in argument, that the police had stored the ring in an evidence envelope which showed the owner to be "unknown." In any event, we are guided by the proposition that the trial court has broad discretion in controlling closing argument. The trial court is in a position to gauge the impact on the jury of argument and the efficacy of measures taken to correct prosecutorial zealotry. Although the argument complained of here should not prompt emulation, we cannot say that the trial court abused its discretion in refusing to grant a mistrial. *State v. Reynolds,* 608 S.W.2d 422, 426–427 (Mo.1980).

Judgment affirmed.

STEWART, P.J., and CRANDALL, J., concur.