STATE of Missouri,
Plaintiff-Respondent,

v.

Everlee HICKS, Defendant-Appellant.

No. 50163.

Missouri Court of Appeals,
Eastern District,
Division Eight.

July 29, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 27, 1986.

Application to Transfer Denied
Oct. 14, 1986.

Frank R. Fabri, St. Louis, for defendant-appellant.

John Munson Morris, Kevin Bradley Behrndt, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Presiding Judge.

Defendant Everlee Hicks appeals convictions by jury for first degree burglary, § 569.160 RSMo 1978, and sodomy, § 566.-060 RSMo Cum.Supp.1982. Hicks was sentenced as a prior offender to two consecutive fifteen year terms of imprisonment.

Defendant Hicks does not contest the sufficiency of the evidence. In the early morning of November 2, 1984, Sujada Pittman was in the bathroom of her apartment in Normandy, Missouri. She heard noises on her patio and thought someone was trying to break in, so she called the police and then a neighbor for help. The intruder entered her apartment. Ms. Pittman was unable to see his face but saw the glint of a gun and could describe his clothing in detail. She testified that her assailant wore gloves, an army jacket, jogging pants, tennis shoes and a dark hat or mask.

After entering her apartment, the intruder came over to Ms. Pittman, put the gun to the back of her head, walked her to a love seat and told her he wanted to "make love" to her. He pushed her to the floor. Ms. Pittman told her attacker that she had called the police. He checked around briefly, then returned to the victim. She was lying on the rug face down and heard a sound as if velcro snaps were being undone. He pushed her robe up, fondled her for a few minutes and placed his fingers on her vagina. There was no penetration, however.

The victim's neighbor, Mr. Person, arrived and rang the doorbell. The intruder made a hasty exit out the patio door. Ms. Pittman let her neighbor inside as Officer Wagster of the Normandy Police Department arrived.

Officer Wagster testified that he responded to this burglary call at approximately 5:18 a.m. He walked up to the apartment, saw Mr. Person and heard the victim's screams. Wagster saw a negro male depart from the patio door. He heard the victim scream that the intruder had a gun. Wagster gave brief chase, ordered the intruder to stop and fired three shots when he did not. The assailant was unharmed and ran out of sight.

Wagster did not get a clear view of the intruder's face, but gave a detailed description of the man's clothing over the radio to other units. Wagster described the man as a negro male, approximately 5'6" and 140 pounds, wearing a hood, dark jacket, blue jogging pants and white tennis shoes.

Officer Merklin heard the radio dispatch and stopped defendant, who matched the radio description, on a nearby street in a well-lit area. Merklin saw defendant Hicks running and, when Merklin told him to stop, the defendant did so but began doing jumping jacks and jogging in place. Hicks later testified in his defense that he had gone jogging that morning. Wagster then arrived at the scene, identified Hicks as the man he had pursued and told Merklin to arrest Hicks. Merklin seized a hood and glove tucked in Hicks' waistband, took him to the police station and booked him.

Mr. Person was at the scene and observed the arrest. He described the defendant as wearing a green army jacket and his hair was frayed, as if he had been wearing a hat or hood, with leaves or grass in it.

A later search of the Pittman apartment revealed a glove, which matched that seized from Hicks by Officer Merklin, but no weapon. Hicks' hood, also seized by Merklin, had velcro snaps on it. At trial, the victim identified defendant Hicks' clothing as that worn by her assailant. Officers

Merklin and Wagster positively identified defendant's clothing and defendant. Finally, testimony at trial showed that the dirt from Hicks' tennis shoes was similar to that around Ms. Pittman's patio and that his sole print pattern seemed to match a print found outside the patio.

Based on this evidence, the jury found Hicks guilty of first degree burglary and sodomy. § 569.160 RSMo 1978 and § 566.-060 RSMo Cum.Supp.1982. The jury found Hicks not guilty on two counts of armed criminal action, § 571.015 RSMo 1978, and one count of attempted rape, § 566.030 RSMo 1978.

Hicks appeals, claiming trial court error in four respects: (1) it was plain error to allow hearsay testimony of a third party police officer as to the positive identification of defendant by another officer; (2) it was plain error for the court to fail, sua sponte, to order a mistrial after the fourth reference to defendant's prior conviction; (3) it was error to refuse to set aside the jury verdict on Count I, first degree burglary, as defendant was acquitted of the burglary's "object crime" of rape; and (4) it was error to refuse defendant's offered instruction on first degree sexual abuse as a lesser included offense of sodomy. We address defendant's contentions in order.

■ Hicks argues his first three points for the first time on appeal. Thus, our review is limited to review for plain error. Rule 30.20. Defendant must make a strong, clear showing that the alleged error affected substantial rights to cause manifest injustice or a miscarriage of justice. *State v. Arnold,* 676 S.W.2d 61, 63 (Mo. App.1984).

■ Defendant Hicks argues in his first point that it was plain error to admit Officer Merklin's testimony concerning Officer Wagster's positive identification of defendant because it is third party hearsay testimony of an extrajudicial identification as prohibited by *State v. Degraffenreid,* 477 S.W.2d 57 (Mo. banc 1972). Merklin made three references to Wagster's identification, but two of these were elicited under cross-examination by defendant's attorney and so cannot be complained of by defendant.

Merklin testified during direct examination:

Q: And after that, what if anything did you do with the defendant?

A: The defendant and—I read the defendant his Miranda rights. He had been positively identified by Sergeant Wagster, and he was placed in the police car, and I took him to the Normandy Station.

■ A statement such as Officer Merklin's does not present a *Degraffenreid* problem because it is not hearsay, which is "in-court testimony of an extrajudicial statement offered to prove the truth of the matters asserted therein, resting for its value upon the credibility of the out of court declarant." *State v. Harris,* 620 S.W.2d 349, 355 (Mo. banc 1981). Instead, this statement is one offered to explain the subsequent conduct of the person testifying. *State v. Calmese,* 657 S.W.2d 662, 663 (Mo.App.1983). Merklin's testimony is offered to explain why he took defendant to the police station, not to prove that this defendant had been positively identified by Officer Wagster.

Even if this testimony was forbidden under *Degraffenreid,* defendant would not prevail. After the present case was argued our Supreme Court decided *State of Missouri v. Harris,* 711 S.W.2d 881 (Mo. banc 1986). In examining the rule of admissibility as to the testimony of a secondary witness introduced for corroboration of an identifying witness' unimpeached testimony concerning extrajudicial identification, the court noted that *Degraffenreid* has "produced a checkered pattern of appellate decisions seeking to apply or, in most cases, to avoid application of *Degraffenreid,* which has rarely been an impediment to affirmance of convictions." *Harris,* at 833. Thus, case results have been uniform under *Degraffenreid,* although the rationales have differed.

The court held:

The issue then, is whether testimony by a police officer or similar witness to a lineup or other extrajudicial identification should be admissible to the same extent as similar testimony by a crime victim who may testify that he identified the defendant in a lineup or other extrajudicial identification. There is no logical distinction between the victim's testimony and that of another person. To the extent that the *Degraffenreid* rule distinguishes these two classes of testimony based on hearsay considerations, the case is no longer to be followed. This does not foreclose the trial judge in his discretion from sustaining objections to such evidence based on other traditional grounds, *but we hold today that such evidence is no longer presumptively inadmissible* where declarant and the corroborating witness both testify and are subject to cross-examination. (our emphasis).

It must be noted that *Degraffenreid* was technically correct in categorizing the victim's testimony as non-hearsay based on matter within his knowledge, while the third person or police officer's testimony are hearsay statements of what the victim said or did out of court. 31A C.J.S. *Evidence* § 193, p. 530–31 (1964). Nevertheless, this facile distinction fails to address the fact that in neither case does this testimony significantly relate to the underlying truth of what is being asserted—namely, that the one named in pretrial identification is the perpetrator of the crime. What this testimony does have in common is that it goes to the fact and reliability of the pretrial identification itself, in a chain-of-custody sense. If the fact of lineup or photographic identification in itself is relevant and material, then the prosecutor, or the defense should be able to prove or disprove the identification by any competent testimony. (footnote omitted)

*Harris*, at 884.

■ On the authority of *Harris* defendant's contention can gain no further support from *Degraffenreid*, in view of the fact that both officers and the victim of-fered competent identification testimony and were cross-examined on their identification by defendant's counsel. Further, the physical evidence, particularly the matching gloves, was substantial evidence identifying defendant. We find no error, plain or otherwise, by the trial court in allowing Officer Merklin's testimony. Rule 30.20.

In his second point defendant asserts that it was error for the trial court to fail to order, sua sponte, a mistrial after the prosecutor referred to defendant's prior conviction during closing argument in that this reference combined with three earlier ones was an impermissible comment on defendant's character.

A reading of the record shows that defendant admitted to his prior forgery conviction during direct examination and that the prosecutor's final comment was made later while discussing a jury instruction. The jury instruction provided that the juror was not to consider defendant's previous conviction as evidence that he "is guilty of any offense for which he is not on trial." The prosecutor commented:

Instruction No. 5 is an instruction that may be sometimes confusing to a jury. I don't think it will be in this sense because of the nature of the prior conviction of the defendant; it's forgery. That instruction basically says that you can't say that just because the defendant was convicted of forgery, he committed another crime. That would be absurd, but it does say that you can take that into consideration in assessing what type of crime was committed in the past, forgery, and you can consider whether or not—to what amount you are able to believe the defendant's statements and his side of the story, and that's the only basis for that instruction—just because he committed one crime, he's going to commit another.

■ The trial court has broad discretion to control closing argument. *State v. Wood*, 596 S.W.2d 394, 403 (Mo. banc 1980), *cert. denied*, 449 U.S. 876, 101 S.Ct. 221, 66

L.Ed.2d 98. A conviction will be reversed for improper argument only if it is established that the comments complained of decisively affected the jury's determination, and relief should rarely be granted on assertions of plain error. *State v. Newlon*, 627 S.W.2d 606, 616 (Mo. banc 1982). We find no error, plain or otherwise. Rule 30.20.

Defendant argues third that the trial court erred in accepting the guilty verdict of burglary first degree because he was simultaneously found not guilty of attempted rape, the object crime of burglary first degree.

■ A person commits burglary in the first degree if he enters unlawfully a building or inhabitable structure for the *purpose* of committing a crime therein and is either armed with a deadly weapon, threatens immediate physical injury to another person or there is present in the structure a non-participant in the crime. (our emphasis). § 569.160 RSMo 1978. The submitted instruction required the jury to find, inter alia, that defendant entered victim's home "for the purpose of committing rape."

■ "The essential element to support a burglary conviction is the intent to commit an offense upon entering the premises. It is not necessary that the offense be completed after the entry, despite the reason for the failure to so consummate it." *State v. Simpson*, 670 S.W.2d 577, 579 (Mo.App.1984). The evidence in the record, the sufficiency of which is not disputed, is adequate for the jury to have reasonably found that defendant entered Ms. Pittman's apartment for the purpose of com-

mitting rape therein although he could only have been found to have committed sodomy. Defendant's statement of his intention to "make love" to the prosecuting witness supports the burglary charge. We find no error, plain or otherwise. Rule 30.20.

In his fourth and final point, defendant avers trial court error in refusing to give his proffered instruction on first degree sexual abuse in that this offense is necessarily a lesser included offense of sodomy.

■ The argument that first degree sexual abuse is an element of sodomy has been raised and rejected in this court. *State v. Holmes*, 654 S.W.2d 133 (Mo.App 1983). Sodomy, requiring deviate sexual intercourse, is narrower than the offense of first degree sexual abuse which requires only "sexual contact." [1]

Thus, to the extent that the crime of sodomy committed without penetration parallels the definition of sexual abuse in the first degree, the acts that warrant conviction of one might well support a conviction of the other. It does not follow, however, that the crimes have merged into one, for "the legislature may provide that the same facts may constitute separate offenses with separate and different penalties. If this is done, it rests in the discretion of the prosecution as to which charge is to be brought." (citation omitted). *Holmes*, 654 S.W.2d at 136.

■ Further, an instruction on a lesser included offense is required only if the defendant so requests and there is evidence to support an acquittal of the greater of-

---

1. Sodomy requires:

    Sodomy.–1. A person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married, without that person's consent by the use of forcible compulsion. § 566.060 RSMo Cum.Supp.1982.

    (2) "Deviate sexual intercourse" means any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person; § 566.010.1(2) RSMo 1978.

First degree sexual abuse requires:

Sexual abuse in the first degree.–1. A person commits the crime of sexual abuse in the first degree if:

(1) He subjects another person to whom he is not married to sexual contact without that person's consent by the use of forcible compulsion; § 566.100 RSMo 1978.

(3) "Sexual contact" means any touching of the genitals or anus of any person, or the breast of any female person, or any such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person. § 566.010.1(3) RSMo 1978.

fense and conviction of the lesser offense. § 556.046.2 RSMo 1978 and *State v. Perkins,* 679 S.W.2d 410, 411 (Mo.App.1984). Even if first degree sexual abuse could be a lesser included offense of sodomy, an instruction on this lesser offense is unwarranted because we cannot say that there is sufficient evidence to support an acquittal of the greater offense of sodomy in that penetration is not an element of this crime. *Holmes,* 654 S.W.2d at 135.

We find no error in the trial court's refusal of defendant's offered instruction. We affirm.

GARY M. GAERTNER, J., and DOUGLAS W. GREENE, Special Judge, concur.