STATE of Missouri,
Plaintiff-Respondent,

v.

Carl PARKER, Defendant-Appellant.

No. 52177.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 1, 1987.

Motion for Rehearing and/or Transfer Denied Sept. 30, 1987.

Application to Transfer Denied Nov. 17, 1987.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Mary Clare McWilliams, St. Louis, for defendant-appellant.

SIMON, Judge.

Defendant, Carl Parker, was found guilty by jury of burglary in the first degree in violation of § 569.160, RSMo (1978) (all further references shall be to RSMo (1978) unless otherwise noted); robbery in the second degree in violation of § 569.030; kidnapping in violation of § 565.110; and two counts of attempted rape in violation of § 564.011. He was sentenced in the Circuit Court of the City of St. Louis to four consecutive prison terms, totaling eighty years.

Defendant raises three points on appeal. Defendant contends that the trial court committed reversible error: (1) in refusing to instruct the jury on the offense of indecent exposure as a lesser included offense to the charges of attempted rape; (2) in refusing to instruct the jury on the offense of attempted sexual abuse in the first degree as a lesser included offense to the charges of attempted rape; and (3) refusing to strike a venireperson for cause.

As defendant does not challenge the sufficiency of the evidence, a brief rendition of the facts will suffice. On September 19, 1985, the first victim (hereinafter referred to as Victim I) arrived home from work at 1:22 p.m. As she was unlocking the back door to her flat, defendant came up behind her. Defendant told Victim I to open the door while reaching into a brief case that he was carrying. As Victim I attempted to open the door, defendant grabbed the keys from her and opened the door himself. Defendant forced Victim I into the flat, pulling her by the arm. Fearing for her safety, Victim I asked defendant what he wanted. Defendant replied that he wanted to use the bathroom. Victim I told defendant what he wanted to know, pointed the way, and then seized her opportunity to try and escape. Victim I grabbed her keys and ran to the front door. Upon reaching the front door, Victim I discovered that defendant was right behind her. Realizing that she did not have time to open the two deadbolts on the front door from within, Victim I ran back to the unlocked back door. She testified that she pulled the back door open, but defendant forced it closed again. In later testimony, she stated that when she ran to the back door, defendant was blocking it. Either way, Victim I then attempted to force defendant out of the house by pushing him through the back door.

Victim I was unsuccessful in her efforts. Instead of pushing him out the back door, Victim I, because of defendant's struggle, pushed him into her roommate's bedroom. Once inside the room, defendant ripped her clothing and undergarments off and pushed her down. A struggle ensued, during which defendant pulled down his pants and exposed his penis. He climbed on top of Victim I and attempted to insert his penis into her vagina, but he could not because Victim I was fighting and kicking.

Defendant tired and Victim I was able to get a blanket to wrap herself in. She grabbed a broom and tried to hit defendant, but he took it from her. She also grabbed a lamp and tried to hit him, but he took it also. Defendant proceeded to hit her with the lamp and then punched her twice in the jaw. He then went for Victim I's purse and started looking through her wallet. There was nothing in her wallet. There was, however, forty-six dollars in her bible, which defendant took, but he did not leave. Defendant tried to attack Victim I again. He tried to pull the blanket off her and said he "wanted some pussy." Victim I told defendant to get out and he finally put the money in his brief case, pulled up his pants, and ran out of the door.

That same day, a second victim (hereinafter referred to as Victim II) observed defendant approach her as she was walking along Kingshighway in the City of St. Louis. He asked her name and where she was going. She told him and he asked if he could accompany her. She told him no, but he forced her off the sidewalk and in between two apartment buildings. Victim II struggled to no avail. Defendant reached inside his brief case and Victim II asked what he was going to do and if he had a gun. Defendant responded that he did not have a gun and that he wanted her breasts first. He ripped her blouse off and Victim II became fearful that he was going to hurt her. She started fighting him, but he managed to pull her jeans open and throw her to the ground. She began to scream while defendant stood over her and pulled his pants down, exposing his penis. Victim II continued to fight, kicking out and striking defendant. Defendant responded that he was "really going to [get her] now." He straddled her, but Victim II continued to fight. She screamed to a woman looking out of her apartment window that she was being raped and that the woman should call the police. The woman left the window, returned with some soda bottles, and began hurling them at defendant. Defendant fled after the second bottle was thrown.

■ In his first and second points, defendant claims that the trial court erred in failing to instruct on two lesser included offenses of attempted rape. In point one he argues that the offense of indecent exposure is a lesser included offense of attempted rape. Defendant argues that "[t]he evidence adduced at trial clearly established that the defendant committed the lesser offense of indecent exposure." Under § 566.130, "[a] person commits the crime of indecent exposure if he knowingly exposes his genitals under circumstances in which he knows that his conduct is likely to cause affront or alarm." Defendant maintains that because "the evidence adduced at trial" was sufficient to support a finding that his purpose in exposing his penis was to cause alarm, it was error for the court not to instruct on indecent exposure.

In reviewing whether an offense can be said to be a lesser included of another, "[a]ttention is focused upon the statutory elements of each offense, rather than the evidence presented in the individual case." *State v. Niswonger*, 721 S.W.2d 207, 208 (Mo.App.1986). The fact that the evidence establishes guilt of another crime does not necessarily mean that such other crime is a lesser included offense of the crime charged. An offense does not become a lesser included offense because the elements of the alleged lesser included offense are supported by the evidence at trial. *State v. Neighbors*, 613 S.W.2d 143, 147 (Mo.App.1980). In *State v. Amsden*, 299 S.W.2d 498, 504 (Mo.1957), our Supreme Court held:

> [It is only when] the greater of two offenses includes all the legal and factual elements of the lesser, the greater includes the lesser; but if the lesser offense requires the inclusion of some necessary element not so included in the greater offense, the lesser is not necessarily included in the greater.

*See* § 556.046.1(1).

Of course, the general rule is that "[a] trial court must instruct on all lesser included offenses supported by the evidence, and it is error for the court to fail to do so." *State v. Smith*, 592 S.W.2d 165 (Mo.

banc 1979). However, a criminal defendant is not entitled to an instruction on a lesser offense "unless it is impossible to commit the greater without first committing the lesser, for otherwise the lesser is not properly a lesser offense to the greater." *State v. Harris,* 620 S.W.2d 349, 355 (Mo. banc 1981). Before we consider the evidence, as defendant claims we must, the offense must meet the "statutory elements" test set forth in *Amsden* in order to justify a lesser included offense instruction. *Neighbors,* 613 S.W.2d at 147.

It is apparent then, that the determination of whether a criminal defendant is entitled to a lesser included offense instruction, involves a two step process: First, we determine if the offense is a lesser included offense under the "statutory elements" test. If it is not, then our inquiry is at an end. But, if the offense does meet the statutory elements test, then we must consider whether the submission of the instruction has evidentiary support. Tested by these principles, it is readily apparent that the offense of indecent exposure is not necessarily included in a charge of attempted rape.

From 1825 through 1978, Missouri's statutory prohibition of indecent exposure was in general terms. In one form or another the statutes provided that "every person, married or unmarried, who shall be guilty of open, gross lewdness or lascivious behavior, or of any open and notorious act of public indecency, grossly scandalous, shall, on conviction," be punished. § 563.150, RSMo (1969). *See* Revised Laws of Missouri, § 77 at 306 (1825). The emphasis of these statutes was on the open and notorious acts of public indecency, and while not specifically mentioning the exposure of genitals, such exposure was proscribed by the statutes. *See State v. Negron,* 374 S.W.2d 622, 623–24 (Mo.App.1963). The purpose of such laws is to protect the public from shocking and embarrassing displays of sexual activity, *see State v. Parker,* 233 Mo.App. 1037, 128 S.W.2d 288, 290 (1939), and suppress sexual exposure having a tendency to outrage public decency and corrupt the public morals. *State v. Metje,* 269 S.W.2d 128, 130 (Mo.App.1954).

In accordance with this purpose and the common law principles governing indecent exposure, *see e.g., State v. Appling,* 25 Mo. 315, 317 (1857) (quoting 4 W. Blackstone, Commentaries 65, note), it had been held under the former statutes that it was essential that someone see the alleged act of exposure, or that the alleged act of exposure occur in a public place and could have been seen by persons who were present had they looked. *See State v. Granger,* 199 S.W.2d 896, 899 (Mo.App.1947). *See also* Annot., 94 A.L.R.2d 1353 (1964); Annot., 93 A.L.R. 996 (1934). It is said that a place is a public one if the exposure is such that is likely to be seen by a number of casual observers. *State v. Metje,* 269 S.W.2d 128, 130–31 (Mo.App.1954).

The present indecent exposure statute, i.e., § 566.130, is more specific and defines the offense of indecent exposure as "the knowing exposure of genitals under circumstances such that he knows that his conduct is likely to cause an affront or alarm." It is obvious that the specificity of the offense has not changed the purpose behind the prohibition of indecent exposure and we see no logical reason why the rule enunciated in *State v. Granger,* 199 S.W.2d 896 (Mo.App.1947), should be abandoned. *See* 40A V.A.M.S. § 566.130 at 787, Comment to 1973 Proposed Code (new statute expands coverage of the prior law). Indeed, a fair reading of § 566.130 compels us to conclude that it remains essential to the offense that someone actually see the alleged act of indecent exposure or that the alleged act of exposure occur in a circumstance where others, by using their ordinary senses, could have been aware of the exposure had they desired. *See State v. Pedigo,* 190 Mo.App. 293, 296–97, 176 S.W. 556, 557, *cert. dismissed sub. nom., State ex rel. Pedigo v. Robertson,* 181 S.W. 987 (Mo.1915). Section 566.130 requires that the defendant have knowledge that his exposure is likely to cause affront or alarm. An act of exposure is not likely to affront decent sensibilities or cause alarm if it is conducted in seclusion away from all possibility of detection. It is only where someone sees the exposure or it is committed in

circumstances where an affront or alarm are likely to result.

It is obvious that the crime of attempted rape contains neither of the aforementioned alternative elements of indecent exposure, i.e., that the exposure be seen or that it occur in a circumstance where an affront or alarm is likely to occur. The elements of rape, as set forth in § 566.030, are: (1) sexual intercourse, (2) with another person, (3) without the other person's consent, (4) by use of forcible compulsion, and (5) nonmarriage of the victim and perpetrator. *See State v. Harris,* 620 S.W.2d 349, 355 (Mo. banc 1981); *State v. Thurber,* 625 S.W.2d 931, 933 (Mo.App.1981). Under § 564.011, an attempted rape occurs when a person, with the purpose of committing rape, does any act which is a substantial step towards the commission of rape. § 564.011.1; *State v. Roden,* 674 S.W.2d 50, 53 (Mo.App.1984).

Thus, in examining the statutory elements it is clear that to sustain a conviction for attempted rape, proof that the perpetrator's genitals were seen or exposed in a circumstance likely to cause affront or alarm is not required. A rape may occur while the victim is asleep, so that it would be unlikely for the victim to see the perpetrator's genitals. *See State v. Stroud,* 362 Mo. 124, 240 S.W.2d 111, 112–13 (1951); *State v. Welch,* 119 Mo. 179, 89 S.W. 945, 947 (1905). Thus, indecent exposure requires the substantiation of an element not required to establish proof of attempted rape. Point denied.

▮ In point two, defendant argues that attempted sexual abuse in the first degree is a lesser included offense to the charges of attempted rape and that it was error for the trial court not to so instruct. Defendant concedes, under a comparative analysis of § 566.100 and § 566.030, that sexual abuse in the first degree is not a lesser included offense of rape. *See State v. Harris,* 620 S.W.2d 349, 354–55 (Mo. banc 1981); *State v. Shannon,* 637 S.W.2d 393, 394 (Mo.App.1982). Nevertheless, defendant argues that *attempted* sexual abuse in the first degree is a lesser included offense of attempted rape. However, as

in his first point, defendant's argument is premised on the evidence adduced at trial and ignores a comparison of the statutory elements.

Defendant relies on *State v. Famber,* 358 Mo. 288, 214 S.W.2d 40 (1948), in support of his evidentiary argument. *Famber* involved a prosecution for statutory rape for which the defendant was convicted. On appeal, the defendant argued, among other things, "that the trial court should have instructed on common assault as a part of the law of the case." *Id.* 214 S.W.2d at 44. In reviewing the alleged error the court did not utilize the "statutory elements" test to determine if common assault was the lesser included offense of rape. Instead, the court posited that "the important question on this assignment is whether there was any substantial evidence of common assault." *Id.* at 45.

No case overruling *Famber* has been cited to us by the state, nor have we found any. However, since *State v. Amsden,* 299 S.W.2d 498 (Mo.1957), our Supreme Court has consistently applied the "statutory elements" test. *See, e.g., State v. Booker,* 631 S.W.2d 854, 856 (Mo.1982); *State v. Harris,* 620 S.W.2d 349, 354–55 (Mo. banc 1981); *State v. Smith,* 592 S.W.2d 165, 165–66 (Mo. banc 1979). Moreover, in *State v. Elliot,* 559 S.W.2d 175 (Mo. banc 1977), the court reconsidered the statutory elements test set forth in *Amsden,* and reaffirmed its position. In view of the fact that our Supreme Court has consistently followed and reaffirmed the use of the "statutory elements" test set forth in *Amsden,* we conclude that it must control the case sub judice.

Attempted rape requires a "substantial step" towards the commission of rape, taken with the purpose of committing the offense. § 564.011.1. The formulation of the specific intent to engage in sexual intercourse without consent by the use of forcible compulsion constitutes the crux of the offense. § 566.030; *State v. Roden,* 674 S.W.2d 50, 53 (Mo.App.1984). The elements of sexual abuse in the first degree, as set forth in § 566.100.1(1), are: (1) sexual contact, (2) with another person, (3) with-

out that person's consent, (4) by use of forcible compulsion, and (5) nonmarriage of the victim and the perpetrator. Attempted sexual abuse in the first degree requires that the accused engage in an act, constituting a substantial step towards the commission of sexual abuse in the first degree, with the purpose of having sexual contact with another person to whom he is not married, without that person's consent, by use of forcible compulsion. § 564.011.1.

It is obvious that the crime of sexual abuse in the first degree is not a lesser included offense of rape. What was said in *Harris, supra,* about sexual abuse in the third degree is determinative. Sexual abuse in the third degree has all the elements of the first degree except forcible compulsion. *See* § 566.120. As stated in *State v. Harris,* 620 S.W.2d at 355:

> The distinguishing feature rendering sexual abuse other than a lesser offense of rape under § 566.030 is found in the difference between sexual intercourse and sexual contact. The former means "any penetration, however slight, of a female sex organ by the male sex organ, whether or not an emission results." § 566.010.1(1), RSMo 1978. Sexual contact is "any touching of the genitals or anus of any person, or the breast of any female person, or any such touching through the clothing, *for the purpose of arousing or gratifying sexual desire of any person."* (Emphasis added). § 566.010.1(3), RSMo 1978. Thus, as well as proscribing conduct not punishable as rape, sexual abuse in the third degree requires a mental state, as shown in the italicized portion of the referenced statute, not necessary to conviction of rape. In rape, purpose and motive are irrelevant. As stated in *State v. Tompkins,* 277 S.W.2d 587 (Mo.1955), "If the evidence showed that there was carnal knowledge, force and the commission of the act, no intent is requisite other than that evidenced by the doing of the acts constituting the offense." *Id.* at 591.

It is also obvious that the crime of attempted sexual abuse in the first degree is not a lesser included offense of attempted rape. Attempt of any inchoate crime re-

quires purposive conduct. *See* 40 V.A.M.S. § 564.011 at 385, Comment to 1973 Proposed Code (1979). One must "act" with the purpose of committing the underlying offense. § 564.011.1. The "act" taken, however, must constitute a "substantial step" toward the commission of the offense. *Id.* A "substantial step" is any conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense. *Id.*

It follows from the attempt requirement that one must act with the purpose of committing the underlying offense, § 564.-011.1, that a specific intent to have "sexual contact" without consent is an essential element of attempted sexual abuse in the first degree. As such, it is readily apparent that the attempted sexual abuse is not a lesser included offense of attempted rape, for the crime of attempted sexual abuse in the first degree contains elements not found in the crime of attempted rape. One may have the specific intent to have "sexual contact," as defined in § 566.010.-1(3), without having the specific intent to have "sexual intercourse," as defined in § 566.010.1(1), because "sexual contact" includes conduct not included in "sexual intercourse." *See State v. Harris,* 620 S.W.2d at 355. Thus, we conclude that the trial court did not err in refusing to instruct thereon. Point denied.

 In his third point, defendant claims that the trial court committed reversible error by refusing to sustain his motion to strike venireperson, Genevieve Geisel, for cause, forcing him to use a peremptory challenge. Defendant argues that Ms. Geisel was not a qualified juror because she expressed an inability to presume defendant's innocence and subsequent questioning by the state did not rehabilitate her.

We have painstakingly searched the legal file and transcript for defendant's motion to strike Ms. Geisel for cause and the trial court's ruling thereon. Our search, however, has been in vain. No such motion, or any ruling of the trial court thereon, is in the record before us. We may not ordinarily notice or determine what was done in the trial court on the basis of statements contained in a brief which are not supported

by the record. *See Hammack v. White,* 464 S.W.2d 520, 522 (Mo.App.1971). However, if the adversary counsel concedes in his brief that which has been omitted, we may consider it as though it were set out in the record. *Id.* Here, the state has asserted that "the trial court did not err in denying [defendant's] motion to strike venireperson ..., Genevieve Geisel...." In doing so, the state has conceded that such a motion was made and that the trial court denied the same.

> The following exchange is at issue:
> QUESTIONS BY THE DEFENDANT
> MR. CHILDRESS (Defense Counsel): I hate to give somebody some short time, if I can ask a couple of questions, I'd like to know a little bit about you. Ms. Geisel, is that right, Geisel?
> VENIREPERSON GEISEL: Geisel.
> MR. CHILDRESS: You work at Pepperidge Farm, is that right?
> VENIREPERSON GEISEL: Right.
> MR. CHILDRESS: How long have you done that?
> VENIREPERSON GEISEL: Six months.
> MR. CHILDRESS: Okay. Can you presume Carl Parker to be innocent?
> VENIREPERSON GEISEL: Not until I heard—hear the case.
> MR. CHILDRESS: Okay. You'd have a problem presuming him innocent at this point?
> VENIREPERSON GEISEL: Right.
> MR. CHILDRESS: Okay. You'd probably want him to prove himself innocent, is that correct?
> VENIREPERSON GEISEL: Whatever, whatever.
> MR. CHILDRESS: Okay.
>
> oOo
> QUESTIONS BY THE STATE
> MR. ROGERS: Ms. Geisel.
> VENIREPERSON GEISEL: Yes.
> MR. ROGERS: Okay. I had a little problem understanding what you were saying before, because it sounded like you said you didn't believe in the presumption of innocence until you heard the testimony and I think maybe we're just—we have a tendency to talk somewhat rapidly and things get lost in the shuffle. Let's spend a short amount of time then I promise you I'm going to shut up, okay. This presumption of innocence like I said before is, the burden is on me to bring testimony in here to show you what—that the guy is guilty, okay? Now, if I don't bring any evidence in here, you got only one decision, you can make and that is not guilty. Fair enough. And you have to keep an open mind about that and you have to make me put the stuff on there that convinces you that he did it. That's what that presumption of innocence is, okay. If we don't do enough, if we don't do anything, then, you have to acquit that man, okay. And that's the basic building blocks of our law, do you understand that?
> VENIREPERSON GEISEL: Right.
> MR. ROGERS: And do you agree with that?
> VENIREPERSON GEISEL: Right.
> MR. ROGERS: Okay. Now, after you hear the evidence, it's another matter all together and that's what Mr. Westbrock was talking about, but at least you agree with that or you could keep an open mind up to that point?
> VENIREPERSON GEISEL: Right, that's what I said, if I could hear the case, then I can form an opinion.
> MR. ROGERS: Fair. Okay. I just wanted to make sure, the record was a little unclear.
> VENIREPERSON GEISEL: Oh, okay.

It is beyond dispute that a criminal defendant is entitled to a full panel of qualified jurors before he is required to exercise peremptory challenges. *State v. Dodson,* 551 S.W.2d 932, 934 (Mo.App.1977), *cert. denied sub. nom., Dodson v. Missouri,* 434 U.S. 1071, 98 S.Ct. 1255, 55 L.Ed.2d 774 (1978). While trial court's refusal to sustain a valid challenge for cause constitutes reversible error, it is well established that the trial court has wide discretion in determining the qualifications of a venireperson, and its decision will not be disturbed absent a clear abuse of discretion and a real probability of injury to the complaining party. *State v. Smith,* 649 S.W.2d 417, 422 (Mo. banc), *cert. denied sub. nom. Smith v. Missouri* 646 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983). Each case must be

judged on its own particular facts and all doubts as to the trial court's ruling should ordinarily be resolved in its favor. *Id.* However, if the trial court does not independently examine a venireperson who expresses doubt as to his ability to be fair and impartial, closer scrutinization by the appellate court is warranted. *State v. Willis*, 688 S.W.2d 38, 41 (Mo.App.1985).

Here, the trial court did not independently examine venireperson Geisel. However, a review of the entire voir dire testimony of venireperson Geisel reveals that she understood that the burden was on the state to prove defendant's guilt, and that he could not be found guilty until the state met that burden. It is true that Ms. Geisel said that she could not presume defendant innocent until she heard the case, but she was adequately rehabilitated by the answers she gave to the questions put to her by the state. Thus, we conclude, even at a heightened scrutiny, that the trial court did not abuse its discretion in overruling defendant's motion to strike for cause. Point denied.

Judgment affirmed.

GARY M. GAERTNER, P.J., and STEPHAN, J., concur.