STATE of Missouri, Respondent,

v.

Dan PATTERSON, Appellant.

No. WD 45817.

Missouri Court of Appeals,
Western District.

Feb. 9, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1993.

---

**154**

Lawrence J. Fleming, St. Louis, for appellant.

William L. Webster, Atty. Gen., John M. Saleeby, Asst. Atty. Gen., Jefferson City, for respondent.

Before FENNER, P.J., and TURNAGE and KENNEDY, JJ.

KENNEDY, Judge.

■ Defendant upon jury trial was convicted of forgery, section 570.090.1(4) RSMo 1986, with a fine to be determined by the court. The court assessed a fine of $1,000. Defendant has appealed to this court.[1]

Defendant was an emergency medical technician. An emergency medical technician drives ambulances. One has to have a current license, issued by the Department of Health, in order to serve as an emergency medical technician.

As an emergency medical technician ("EMT"), defendant had to renew his license every three years. In order to do so, he had to comply with certain continuing education requirements. The continuing education requirement could be satisfied by participating in 30 units—roughly 60 hours—of training courses during the preceding three years, taught by accredited instructors.

In order to qualify for relicensure as an EMT in 1988, defendant submitted to the Department of Health class rosters for classes held on July 23 and September 10, 1986. The rosters were purportedly signed by a Dr. Ewing. The rosters were intended to prove to the Department of Health that appellant had attended the classes, and that they were taught by Dr. Ewing, an accredited instructor. The fact was, contrary to the intended message of the rosters, Dr. Ewing had not taught the classes and her signature had been copied thereon. Appellant, himself a qualified instructor, had taught the classes.

■ Appellant says he could not have been guilty of any "purpose to defraud" within the meaning of section 570.090.1(4), because the Department of Health had no property interest of which it could be defrauded by its reliance on the false rosters. The part of the statute under which Mr. Patterson was charged and convicted reads as follows:

1. A person commits the crime of forgery if, with the purpose to defraud, he

---

1. We note that, by filing his notice of appeal before paying his fine in full, defendant has preserved the right to appeal his conviction. *State v. Hamm,* 807 S.W.2d 692 (Mo.App.1991).

(4) Uses as genuine, or possesses for the purpose of using as genuine, or transfers with the knowledge or belief that it will be used as genuine, any writing or other thing which the actor knows has been made or altered in the manner described in this section.

Defendant cites us to cases under the Federal mail fraud statute, 18 U.S.C. § 1341, where it is held that the fraud punishable under that statute is fraud which is aimed at the deprivation of property or money. *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987); *United States v. Murphy,* 836 F.2d 248 (6th Cir.1988); *United States v. Ferrara,* 701 F.Supp. 39 (E.D.N.Y.1988), *aff'd,* 868 F.2d 1268 (2nd Cir.1988).

We do not believe the forgery statute is to be so narrowly construed as to apply only when the intended object of the "purpose to defraud" is property or property rights. The "intent (or purpose) to defraud" requirement of forgery statutes has been found to exist where intangible rights have been involved. In *People v. Russel,* 214 Cal.App.2d 445, 29 Cal.Rptr. 562 (Dist. Ct.App.1963), for example, the defendant had forged the signature of another on a request for a college transcript of grades. It will not be amiss to quote the court's language:

The pivotal question was whether defendant forged the documents with intent to defraud someone. If we follow the path of our own courts, the intent to defraud is well made out. In a limited sense, there is an intent to defraud the college of the transcript, for the college would not otherwise give it up to the forger. In a wider sense, the forger is violating the college rules that restrict the circulation of such transcripts. It is widely settled that the fraud involved may be against the public. (*Wharton's Criminal Law,* 12th Ed., Ruppenthal, § 708). In *French v. United States,* 5 Cir., 232 F.2d 736, 739, it was held that drawing a false name on a prescription tends to defraud the government, in that it frustrates the administration of the

public because it has been determined that the best interests of society are served by not opening to the general public the grades achieved by individuals. *Russel,* 214 Cal.App.2d at 452, 29 Cal. Rptr. 562.

The treatise writers seem to agree that the forgery statute goes beyond cases of pecuniary fraud, to reach cases of a general dishonest or corrupt intent. See R. Perkins, *Criminal Law,* 342–343 (2nd ed. 1969); Charles E. Torcia, *Wharton's Criminal Law,* § 506 (14th ed. 1981).

In the case before us, taking the evidence and inferences favorable to the verdict, the defendant used a signature he knew to be counterfeit to deceive the Department of Health into issuing a certificate to which defendant was not entitled. It was a fraud practiced upon the Department of Health to get it to issue the certificate. It was a fraud practiced upon the public, for the certificate would have falsely attested to defendant's qualifications as an emergency medical technician. It was a fraud practiced upon the ostensible signer of the class roll, in that it falsely attributed to her an untrue statement.

We are cited to no authority, nor have we found any by our own efforts, where the crime of forgery (which has always, both at common law and under modern statutes, required proof of defendant's intent to defraud) has been limited to cases of the deprivation of property by means of the forgery.

We hold that defendant's knowing use of the forged papers, with the general intent to deceive the Department of Health and to induce it to certify to defendant's eligibility for recertification as an emergency medical technician, comes within the term "purpose to defraud," as used in section 570.090.1.

■ Defendant points to section 575.-060.1(2)(a) RSMo 1986, which he claims is a more specific statute describing defendant's conduct, and which is a misdemeanor. The presence of this specific and narrow statute, says defendant, indicated that the legislature did not intend to include the same conduct in section 570.090. He says he should have been prosecuted under the

narrower and more specific statute. Where the acts of the defendant, alleged to constitute a criminal offense, come within the terms of two different statutes, the state may elect which of the two statutes it will proceed under. If one statute describes the offense in general terms and another in specific terms, the state may proceed under the broader statute; it is not limited to the more specific statute. *State v. Hudson,* 793 S.W.2d 872, 879 (Mo.App. 1990); *State v. Grady,* 691 S.W.2d 301, 303 (Mo.App.1985), *cert. denied, Grady v. Missouri,* 474 U.S. 951, 106 S.Ct. 317, 88 L.Ed.2d 301 (1985).

The jury found the defendant guilty of forgery and sentenced defendant to a fine to be determined by the court. The court assessed a fine of $1,000, but stayed payment of $500 thereof "on condition that defendant be on probation for one (1) year on the following conditions: 1) That defendant not run for public office for one (1) year ..."

Defendant, after filing notice of appeal to this court, rejected the probation and paid the $1,000 fine in full. Our only record of this is in the court's journal, which reads as follows: "04/06/92 Letter from Lawrence J. Fleming, Attorney for defendant, stating that defendant 'does not want the probation and has specifically directed me to reject it and to assure that his fine is paid.'"

■ Defendant claims the condition of probation, namely, that he not run for public office for one year, was an invalid condition upon defendant's probation. He cites the language of section 559.021, which says "(t)he conditions of probation shall be such as the court in its discretion deems reasonably necessary to insure that the defendant will not again violate the law." He argues (citing *State v. Fetterhoff,* 739 S.W.2d 573, 576 (Mo.App.1987)) that the condition that defendant not run for office for one year has no tendency to rehabilitate the defen-

dant, nor to prevent him from violating the law again.[2]

The question raised by defendant is moot, since defendant rejected the probation, paid his fine in full, and was not thereafter in any way bound by the condition of probation imposed by the judge.

Judgment affirmed.

All concur.