STATE of Missouri, Respondent,

v.

Clarence K. BOUSE, Appellant.

No. WD 62344.

Missouri Court of Appeals, Western District.

Oct. 19, 2004.

Motion for Transfer Denied
Nov. 23, 2004.

Application for Transfer Denied
Dec. 21, 2004.

James R. Wyrsch, Kansas City, MO, Christopher McHugh, Wichita, KS, for appellant.

Jeff A. Mittelhauser, Sedalia, MO, for respondent.

PAUL M. SPINDEN, Judge.

For his transmitting a series of six photographs of his penis via the Internet to a person whom he thought was less than 14 years of age, the circuit court entered judgment against Clarence K. Bouse convicting him of three counts of attempted sexual misconduct involving a child. Bouse appeals, asserting that the state did not present sufficient evidence. He contends that, as defined by § 566.083, RSMo 2000, his exposure of his penis via photographs was not sexual misconduct involving a child—he would have had to expose his penis in the physical presence of his would-be victim. We disagree. Applying the plain and ordinary meaning of the statute's language leads us inescapably to the conclusion that Bouse was guilty of attempted sexual misconduct involving a child, and we affirm the circuit court's judgment.

In early November 2001, in an attempt to identify and to locate people who would victimize children, Sheriff Steve Cox of Livingston County posed in an Internet

"chat room"[1] as Carrie. Bouse began "chatting" with Cox who identified himself as a 13–year–old girl in the seventh grade. During the next several days, Cox, posing as Carrie, exchanged e-mail messages with Bouse and spoke online via "instant messaging."[2] Their correspondence often discussed sexual subjects. On November 11, 2001, Bouse sent an e-mail to Carrie and attached three pictures of his penis. Later that day, he sent another e-mail with two more pictures of his penis. The next day, Bouse e-mailed Carrie again, attaching another picture of his penis.

Bouse made plans with Carrie to meet so that they could engage in sex. He also e-mailed several pictures of unidentified couples engaging in sexual activity. Bouse and Carrie eventually made plans to meet at a motel on November 16, 2001, and on November 19, 2001. Bouse, however, never showed up at the motel on either of the planned dates.

The state charged Bouse with two counts of attempt to commit statutory rape in the first degree, two counts of attempt to commit statutory sodomy in the first degree, and three counts of attempt to commit sexual misconduct with a child. Bouse waived a jury trial. At the conclusion of the state's evidence, the circuit court granted Bouse's motion for judgment of acquittal on the attempted statutory rape and attempted statutory sodomy counts. The circuit court found Bouse guilty of three counts of attempted sexual misconduct with a child.

1.  Chat rooms are online forums in which individuals are able to communicate with other people via the Internet. A person entering a chat room is able to see the user name of every person in the online room. Messages are transmitted instantaneously and can be seen by everyone in the on-line chat room.

2.  Instant messaging is a form of computer communication in which individuals hold an

Bouse asserts that the evidence was insufficient to prove that he attempted to commit sexual misconduct with a child. We disagree.

■ A person commits the crime of sexual misconduct involving a child if he:

(1) Knowingly exposes [his] genitals to a child less than fourteen years of age in a manner that would cause a reasonable adult to believe that the conduct is likely to cause affront or alarm to a child less than fourteen years of age; [or]

(2) Knowingly exposes [his] genitals to a child less than fourteen years of age for the purpose of arousing or gratifying the sexual desire of any person, including the child[.]

Section 566.083. The "north star" of navigating interpretation of statutory law is to discern the General Assembly's intent by applying the plain and ordinary meaning of a statute's words. *Spradlin v. City of Fulton,* 982 S.W.2d 255, 258 (Mo. banc 1998). In the absence of a statutory definition, " '[t]he plain and ordinary meaning of a word is derived from the dictionary.' " *State ex rel. Nixon v. QuikTrip Corporation,* 133 S.W.3d 33, 37 (Mo. banc 2004) (quoting *Hemeyer v. KRCG–TV,* 6 S.W.3d 880, 881 (Mo. banc 1999)).

The dictionary definition of "expose" is:

1 **a:** to lay open (as to attack, danger, trial, or test): make accessible to something that may prove detrimental: deprive of shelter, protection, or care (him to the weather) (~troops needless-

online conversation via the Internet. When a person sends an instant message to another person online, that message is transmitted instantaneously to the recipient, opening a window that allows both parties to see the message and to respond immediately. The window, while open, contains a complete history of all messages sent and received during the online conversation.

ly) (a coast *exposed* to severe gales) **b:** to submit or subject to an action or influence (˜children to good books) (think . . . they can arrest the fall of rain by *exposing* it to a boulder—J.G.Frazer) (a man to new impressions); *specif:* to subject (a sensitive photographic film, plate, or paper) to the action of radiant energy **c:** to abandon (an infant) esp. by leaving in the open: DESERT (the foundation of lying-in hospitals and orphanages . . . kept the children alive, . . . prevented them being *exposed*—J.H.Plumb) **2:** to lay open to view: lay bare: make known: set forth: EXHIBIT, DISPLAY (*exposing* a sun-tanned back) (each had started *exposing* his views—F.M.Ford) (the new display object is to ˜the package—*Printers' Ink*): as **a:** to offer publicly for sale (all of which I shall ˜for sale at public auction—*Detroit Law Jour.*)—sometimes used with *to* (the markets at which the corn, the cattle, the wool . . . of the surrounding country were *exposed* to sale—T.B.Macaulay) **b:** to exhibit (a religious relic or the Host) for public veneration **c:** to reveal the face of (a playing card)—used chiefly in games in which such exposure is contrary to the rules **d:** to conduct (oneself) as an exhibitionist **3 a:** to disclose or reveal the faults, frailties, or unsoundness of: bring to light (as something criminal or shameful): UNMASK took a leading part in *exposing* the pretensions of this

quack) (has behaved like a cad and ought to be *exposed*—Kingsley Martin) ( ˜a voting fraud) (˜the abuses of the day—John Mason Brown) **b** *obs:* RIDICULE, SATIRIZE **syn** see SHOW.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 802 (1993).[3] Under the dictionary definition, "exhibit" and "display" are synonyms of "expose."

▮ Particularly noteworthy is the dictionary's not qualifying its definition of "expose" with any means or mode. In the plain and ordinary sense of "expose" under the dictionary's definition, one's exposing his or her body—whether a "sun-tanned back" or genitals—would still be an exposure whether it was done in public, in private, in a park, in one's house, by means of a web camera on the Internet, or by means of photographs via the Internet. Hence, Bouse's sending a picture of his bared penis to Carrie was an exposure of his genitals—albeit by photograph rather than in person—in the plain and ordinary meaning of "expose."

The General Assembly also did not seek to qualify its definition of expose with any means or mode, such as requiring that the exposure occur in the victim's presence. Had the General Assembly wanted to make "presence" a requirement for sexual misconduct involving a child, it certainly

---

**3.** In his dissent, Judge Lowenstein relies on an idiom, "expose oneself," rather than relying on the definition of "expose"—the term that the General Assembly used in § 566.083.1. The dictionary relied upon by the dissent lists "expose oneself" as a tenth definition of "expose," and the definition seems to be addressing what § 566.083.1 is addressing: "exhibit[ing] one's body, esp. one's genitals, publicly in an immodest or exhibitionistic manner." RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 682 (2d. ed.2001). But, as the dictionary explains, idioms are not plain and ordinary meanings.

They are "expressions whose meanings are not predictable from the *usual* meanings of the constituent elements[.]" *Id., How to Use This Dictionary,* xix (emphasis added). Obviously, the idiom, "expose oneself," by definition cannot be deemed to be the plain and ordinary meaning of "expose." Exacerbating its error, the dissent seizes on "publicly" in the definition of "expose oneself" to conclude that exposing one's genitals requires that the victim be present when he makes the exposure. "Public" and "presence," however, are not synonymous.

knew how to do it. *Hemeyer*, 6 S.W.3d at 885 (Holstein, J., concurring) ("General Assembly has demonstrated that it knows how to provide for the award of attorney's fees in 'open records' cases by making specific provision therefore in another subsection of the same statute."); *City of Fredericktown v. Bell*, 761 S.W.2d 715, 717 (Mo.App.1988) ("section 544.157 indicates that the legislature knows how to create the authority to execute extra-jurisdictional arrests" by omitting language from one version of a statute from a later version). In § 566.093.1(2), RSMo 2000, for example, the General Assembly declares that a person commits the crime of sexual misconduct in the second degree if he "[h]as sexual contact *in the presence* of a third person or persons under circumstances in which he knows that such contact is likely to cause affront or alarm." [4] We can safely assume that, had the legislature wanted "presence" to be an element of sexual misconduct involving a child, it would have added it to § 566.083.1 as it did in defining second-degree sexual misconduct in § 566.093.1(2).

Furthermore, a sister jurisdiction, the Court of Appeals of Virginia, ruled in a case "on all fours," that the plain and ordinary meaning of "expose" included an exposure on the Internet as well as in a public park. *Brooker v. Commonwealth*, 41 Va.App. 609, 587 S.E.2d 732 (2003). The *Brooker* court equated the electronic transmission of images via a web camera with a public place or actual presence although Virginia common law required that the exposure be committed in a public place or in the victim's actual presence. *Id.* at 736. [5]

■ Bouse admitted that he knowingly and intentionally sent photographs of his penis to Carrie, whom he thought was less than 14 years old, knowing that Carrie was likely to see them. He specifically directed his exposure to a child whom he thought was less than 14 years of age. This is an important distinction. Bouse did not expose his genitals in an explicit film or in a magazine clearly marked for adults only. He cannot, and does not, argue that he did not know that his penis may be viewed by a child less than 14 years of age. He specifically wanted to expose his penis by means of a photograph to Carrie whom he thought was less than 14 years of age.

■ Central to Judge Lowenstein's dissent is the rule of lenity. This, however, is not a proper case for employing the rule of lenity. This rule mandates that all ambiguity in a criminal statute be resolved in the defendant's favor. *State v. Harper*, 855 S.W.2d 474, 479 (Mo.App.1993). But, for it to apply, an ambiguity must be present.

We find no ambiguity in § 566.083.1. Simply and in straightforward fashion it prohibits one from knowingly exposing his genitals in a manner that a reasonable adult would believe was likely to cause affront or alarm to a child less than 14 years of age. Consistent with the dictionary's definition of "expose," the General Assembly recognized in the phrase, "in a manner," that exposure can occur in various manners, including photographs sent via the Internet. Hence, the rule of lenity simply is not applicable to this case.

■ Moreover, enhancing the plain and ordinary meaning of § 566.083.1's un-

---

4. We added the emphasis.

5. In his dissent, Judge Lowenstein dismisses Brooker on the ground that its holding was "based on the definition of 'expose' found in a dictionary." Dissenting Opinion, slip op. at

6. For reasons already noted, this results from the dissent's improper reliance on the idiom, "expose oneself," and not on the term used in the statute, "expose." *See* note 3 *supra*.

ambiguous language, common sense and evident statutory purpose should have dispelled all of the dissent's doubts. Consideration of a statute's history, surrounding circumstances, and the societal problem to which the General Assembly was addressing itself is proper. *State v. Daniel,* 103 S.W.3d 822, 826 (Mo.App.2003). Clearly, in this time in which children increasingly have become the targets of sexual predators, the General Assembly intended to protect children both from being exposed to genitalia and from being coerced to display their own genitalia. Indeed, the General Assembly's desire to protect young children from such acts surpasses its desire to protect any other demographic sector. Section 566.083, adopted in 1997, applies exclusively to children under 14 years of age and makes the offense of sexual misconduct a Class D felony.[6] Those 14 and older are also protected from offensive displays of genitalia, but the offense is only a Class B misdemeanor. Section 566.093. Moreover, the degree of protection is not the same as it is for children under 14 years of age. Under § 566.093, for example, a predator could persuade a child 14 years of age and older to display his or her own genitalia without violating the statute.

The dissents' narrow interpretations of "expose" would thwart the General Assembly's purpose of affording heightened protection of children under the age of 14. Under the dissents' understanding, a person could expose his genitals to a child under the age of 14 so long as he is ingenious in his methodology, such as sending photographs.

This is not only crabbed statutory interpretation; it is also contrary to common sense. The General Assembly intended for § 566.083 to protect Missouri children from being the specific targets of alarming displays and exhibits of genitalia. The General Assembly could reasonably believe that the proscribed exposure by a particular perpetrator specifically targeting a child posed a more acute danger than that posed by explicit movies and magazines, for example. That the General Assembly was concerned enough to enact § 566.083 for the specific protection of children, though the prohibited conduct had already been made an offense by § 566.093, makes this abundantly clear.

■ As emphasized by Judge Lowenstein's dissent, "expose" under common law meant that the exposure had to occur in a public place or in the victim's actual presence. We recognize the " 'familiar rule of construction that where a statute uses words which have a definite and well known meaning at common law it will be presumed that the terms are used in the sense in which they were understood at common law, and they will be so construed unless it clearly appears that it was not so intended.' " *State v. Duggar,* 806 S.W.2d 407, 408 (Mo. banc 1991) (quoting *Maltz v. Jackoway–Katz Cap Company,* 336 Mo. 1000, 82 S.W.2d 909, 912 (1934)).

■ Although public exposure persists as an element of indecent exposure in some jurisdictions such as Virginia, Missouri has dropped this element from its statutory definitions in 1979. Missouri simply requires that the exposure occur in a manner that would cause a reasonable adult to believe that the conduct would likely cause affront or alarm or that the exposure be for the purpose of arousing or gratifying a person's sexual desire. C.E. Torcia, Wharton's Criminal Law § 308

---

**6.** The circuit court found Bouse guilty of *attempted* sexual misconduct involving a child. An attempt to commit sexual misconduct involving a child is a Class A misdemeanor. Section 564.011.3(4), RSMo 2000.

(15th ed.1995); *see also* 67 C.J.S. *Obscenity* § 10 ("Ordinarily, *though not necessarily,* the place where indecent exposure is made must be public in order for the exposure to constitute an offense.") (emphasis added).

Before 1979, Missouri was among those that "adopted the common-law requirements that for conviction of indecent exposure, there must be shown a willful and intentional exposure of the private parts of the body, in a public place, and in the presence of others." A.G. Barnett, Annotation, *Criminal Offense Predicated Upon Indecent Exposure,* 94 A.L.R.2d 1353, 1359 (1964). The General Assembly left no room for doubting that it intended this when it enacted its statutes. From 1825 through 1978, the law provided that "every person, married or unmarried, who shall be guilty of *open, gross* lewdness or lascivious behavior or of any *open and notorious act* of public indecency, grossly scandalous" would be adjudged guilty of a misdemeanor. *State v. Parker,* 738 S.W.2d 566, 569 (Mo.App.1987) (emphasis added) (for historical references, *see, e.g.,* § 563.150, RSMo 1969; § 563.150, RSMo 1959; § 563.150, RSMo 1949; § 4653, RSMo 1939; § 4265 RSMo 1929; § 3515, RSMo 1919; § 4729, RSMo 1909; § 2175, RSMo 1899; § 3798, RSMo 1889; § 1541, RSMo 1879; Chp. 206, § 8, RSMo 1865; Chp. 50, art. VIII, § 8, RSMo 1855; Chp. 47, art. VIII, § 8, RSMo 1845; Art. VIII, § 8, RSMo 1835).

Missouri courts interpreted "open" and "gross," as related to lewd acts, and "open and notorious," as related to public indecency, as requiring presence. *See State v. Metje,* 269 S.W.2d 128, 130 (Mo.App.1954) ("To constitute an offense under [§ 563.150] the conduct complained of must have occurred in a public place or have been committed in the actual presence of another person."); *State v. Granger,* 199 S.W.2d 896, 899 (Mo.App.1947) ("A single act of lewdness or indecent behavior is sufficient ... provided it be 'open and notorious,' that is, committed in the presence of another person or in a public place."); *State v. Parker,* 233 Mo.App. 1037, 128 S.W.2d 288, 289–90 (1939) ("The word open as used in the statute means public, not secret. The behavior that constitutes the offense must be open and notorious, that is, committed in a public place, or committed in the actual presence of, or in such close proximity to, another person so that it may be known what is being done by the use of ordinary senses."); *State v. Pedigo,* 190 Mo.App. 293, 176 S.W. 556, 558 (1915) ("[A]ct of lewdness ... is open and gross ... if committed in the actual presence of, and such close proximity to, other persons that they knew of the same being done by the use of their ordinary senses of hearing and seeing[.]").

█ It is axiomatic that the General Assembly, which specifically adopted the common law, retains the authority to abrogate it in its statutes. The legislature has unequivocally said:

[N]o act of the general assembly or law of this state shall be ... limited in its scope or effect by the courts of this state, for the reason that it is in derogation of, or in conflict with, the common law ...; but all acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof.

Section 1.010, RSMo 2000.

The General Assembly abrogated the common law when, on January 1, 1979, it repealed § 563.150 and created the offense of "indecent exposure." *See* L.1977 S.B. 60. It altered the common law crime of indecent exposure by declaring that a person committed it when he "knowingly expose[d] his genitals under circumstances in which he knows that his conduct is likely

to cause affront or alarm." Section 566.130, RSMo 1978. Notably missing from the new statute were the terms "open," "gross," and "notorious." The crime of "indecent exposure" continued to exist until January 1, 1995, when the General Assembly repealed § 566.130 and created the crime of "sexual misconduct in the second degree." *See* L.1994 S.B. 693. Similar to "indecent exposure," the new offense required that a person expose "his genitals under circumstances in which he knows that his conduct is likely to cause affront or alarm[.]" Section 566.093.1(1), RSMo 1994. It continued to govern exposures to both adults and minors until 1997, when the General Assembly created the offense of sexual misconduct involving a child and enacted it as § 566.083.

After the General Assembly redefined the common law offense of "indecent exposure" by eliminating all references to "open," "gross," and "notorious," it did not reintroduce them when it created the new offense, "sexual misconduct in the second degree," or when it established the offense of "sexual misconduct involving a child." Indeed, throughout all these changes, none of the language that had been the basis for over a century for the court's interpreting the statutes as requiring an exposure be in a public place or the victim's actual presence, was reintroduced.

When the General Assembly alters a statute, we are obligated to deem the alteration as having an effect. We are not to conclude that the legislature's deleting significant terms from its statutes is meaningless. *State v. Sweeney,* 701 S.W.2d 420, 423 (Mo. banc 1985); *In the Interest of B.C.H.,* 718 S.W.2d 158, 165 (Mo.App.1986) (Manford, J., concurring). Moreover, unless it is shown otherwise— and it is not in this case—we are constrained to presume that the General Assembly was aware of the manner in which

we had interpreted "open," "gross," and "notorious" and that it intended to accomplish some result by deleting these words. The applicable rule of construction says:

> In construing statutes to ascertain legislative intent it is presumed the legislature is aware of the interpretation of existing statutes placed upon them by the state appellate courts, and that in amending a statute or in enacting a new one of the same subject, it is ordinarily the intent of the legislature to effect some change in the existing law. If this were not so the legislature would be accomplishing nothing, and legislatures are not presumed to have intended a useless act.

*Kilbane v. Director of Department of Revenue,* 544 S.W.2d 9, 11 (Mo. banc 1976).

If the legislature did not intend to abandon the common law's requirements that the exposure be public or in the victim's actual presence, what did it intend to accomplish by deleting "open," "gross," and "notorious"? Perhaps the legislature was attempting to clarify the law, but this conclusion does not make much sense. The legislature can hardly be deemed as attempting to clarify its intention to retain the common law's requirements by deleting those words that had been interpreted as requiring precisely that which the common law required.

Section 566.093 further demonstrates that it is no longer necessary that a prohibited exposure occur in a place accessible to the public or in the victim's physical presence. Sections 566.083 and 566.093 are similar to the extent that both prohibit exposures of genitalia that are likely to cause affront or alarm. The former, sexual misconduct involving a child, applies to children under 14, and the latter, sexual misconduct in the second degree, applies to persons 14 and older.

Section 566.093.1 says:

A person commits the crime of sexual misconduct in the second degree if he:

(1) Exposes his genitals under circumstances in which he knows that his conduct is likely to cause affront or alarm; or

(2) Has sexual contact in the presence of a third person or persons under circumstances in which he knows that such conduct is likely to cause affront or alarm.

We acknowledge that in *dictum* in *State v. Parker*, 738 S.W.2d 566, 569 (Mo.App. 1987) ("An act of exposure is not likely to affront or alarm decent sensibilities or cause alarm if it is conducted in seclusion away from all possibility of detection."), this court's Eastern District suggested that "affront or alarm" implies physical presence. In its *dictum*, the *Parker* court reasoned that the statutory changes in 1979 made no difference because, for "logical reason[s]," affront or alarm presupposes that another person is physically present. *Id.* This, however, necessarily makes "presence," as used in § 566.093, mere surplusage.

■ The logic of *Parker* eludes us, but, of much more significance, it violates a cardinal rule of statutory construction by presuming that any of a statute's words are mere surplusage. To the contrary, we must presume that each word of a statute has separate and individual meanings. *State v. Belton*, 108 S.W.3d 171, 175 (Mo. App.2003). Moreover, sound reasoning draws us to a conclusion opposite that of *Parker*. Affront or alarm exists because an affronting or alarming act of exposure is seen, *Parker*, 738 S.W.2d at 569–70, and, as Bouse's case demonstrates, an act of exposure can be seen without physical presence. Indeed, there is no dispute here about the affront and alarm element despite Carrie's seeing the genitalia on a computer screen rather than in person.

Because the General Assembly used both "in the presence" and "affront or alarm" in § 566.093.1(2), we cannot accept *Parker's* rationale. The only conclusion that can be drawn, consistent with giving every word meaning, is that whether the sexual misconduct is with a child under 14 years of age or an older person, the General Assembly knows how to require the perpetrator's physical presence at the scene of the crime. It did so from 1825 to 1979, and it does so today in the limited context of § 566.093.1(2). It does not do so in § 566.083.1. Certainly, the General Assembly was aware in 1997, when it enacted § 566.083, that the Internet, e-mail, web cameras, and photographic equipment were widely available. Certainly, it knew that a person could expose himself without being in a public place, or even in his victim's physical presence. Knowing this, it said only "exposes" in § 566.083.1 without making any reference to open and notorious acts as the common law would require, though statutory history tells us that it knew how to do so.

■ The state conceded at oral argument that it could have prosecuted Bouse for attempting to furnish pornographic materials to a minor under § 573.040, RSMo 2000, a Class A misdemeanor, rather than prosecuting him for attempted sexual misconduct involving a child. Judge Lowenstein suggests that the charges are mutually exclusive and that the prosecutor should have prosecuted Bouse for attempting to furnish pornographic materials to a minor. To the contrary, the prosecutor could have prosecuted Bouse for both offenses. The state may proceed under any applicable criminal statute when there is more than one that prohibits the defendant's conduct. Indeed, "[o]ne act may constitute two offenses so long as each offense requires proof of an additional fact which

the other does not." *State v. Gordon,* 948 S.W.2d 673, 675 (Mo.App.1997). The elements of sexual misconduct involving a child and furnishing pornographic material to a minor are not the same. Judge Lowenstein's dissent suggests, however, that where one statute clearly contemplates the proscribed conduct, it is reasonable to conclude that the General Assembly did not intend for another to apply. To adopt this as a rule of construction would be to undermine the very idea that the alleged conduct may violate multiple criminal statutes.

For all the foregoing reasons, we affirm the judgment of conviction. Bouse took a substantial step towards the commission of the offense of sexual misconduct involving a child. He would have succeeded in all respects in committing that offense but for Carrie's being a police officer over 14 years of age. His offense of attempted sexual misconduct involving a child was complete when he set the stage for "Carrie" to open his e-mail attachments containing photographs of his penis.

EDWIN H. SMITH, Chief Judge, ROBERT G. ULRICH, Judge, PATRICIA A. BRECKENRIDGE, Judge, JAMES M. SMART, JR., Judge, and LISA WHITE HARDWICK, Judge, concur.

HAROLD L. LOWENSTEIN, Judge, dissents in separate opinion in which VICTOR C. HOWARD, Judge, and THOMAS H. NEWTON, Judge, concur.

JOSEPH M. ELLIS, Judge, dissents in separate opinion in which RONALD R. HOLLIGER, Judge, concurs.

JOSEPH M. ELLIS, Judge, dissenting.

I respectfully dissent. I write separately to point out the obvious. Mr. Bouse did not expose "his genitals." Rather, he displayed a photographic image of his genitals. Notwithstanding the majority's ardent desire to punish Mr. Bouse's reprehensible conduct, common sense, a commodity seemingly in short supply sometimes, compels the conclusion that displaying a photographic image does not constitute "expos[ing] the person's genitals" in the lay person's everyday usage and understanding of the concept.

For this reason, I would reverse the trial court's judgment.

HAROLD L. LOWENSTEIN, Judge, dissenting.

I respectfully file this dissent. A person commits the crime of sexual misconduct involving a child if the person:

(1) Knowingly exposes the person's genitals to a child less than fourteen years of age in a manner that would cause a reasonable adult to believe that the conduct is likely to cause affront or alarm to a child less than fourteen years of age;

(2) Knowingly exposes the person's genitals to a child less than fourteen years of age for the purpose of arousing or gratifying the sexual desire of any person, including the child[.]

§ 566.083.

Bouse argues that he could not have committed the offense, since he did not expose his genitals as contemplated by the statute. Bouse states that sexual misconduct involving a child is essentially the crime of indecent exposure modified to apply when the exposure is to a child. He further states that indecent exposure traditionally meant actual in-person exhibition of a person's genitals. Therefore by analogy, Bouse claims that he cannot be convicted of the charged crime without actually exhibiting his genitals (as opposed to a

photograph or a picture of his genitals) in the presence of the victim.[1]

This court should resist the temptation to read the words, "or photographs of the person's genitals" into the two subsections of Section 566.083. Only by reading those words into the statutory language can it be clearly determined that the legislature intended to make a felony of the conduct charged here. However, "common sense and evident statutory purpose" cannot be used to create, and then to "dispel any remaining ambiguity" in this criminal statute. The defendant here took pictures of his genitals and transmitted the pictures via the Internet. Section 566.083 does not criminalize this conduct. The most that can be said of this statute is that an ambiguity exists as to whether the conduct here fit the words of the law, and if that is the case, then according to law, all doubts must be resolved in favor of the defendant.

Under the rule of lenity, a criminal statute is to be strictly construed against the government and liberally in favor of the defendant. *Goings v. Mo. Dep't of Corrs.*, 6 S.W.3d 906, 908 (Mo. banc 1999). "Any doubt as to whether the act charged and proved is embraced within the prohibition must be resolved in favor of the accused." *State v. Jones,* 899 S.W.2d 126, 127 (Mo. App.1995). "No person may be made subject to a criminal statute by guesswork or mere implication and a criminal statute may not be held to include offenses or persons other than those clearly described and provided for within both the spirit and the letter of the statute." *State v. Fredrickson,* 689 S.W.2d 58, 61 (Mo.App.1984).

The State points to several definitions of the word "expose" to establish that there is no ambiguity and that Bouse's conduct clearly falls within the prohibition of the statute. Some of the definitions offered by the State include: "to make bare; to uncover; to disclose; to set out to view; to lay open to examination." However, these definitions have been taken out of context. The dictionary used by the State indicates that these definitions refer to exposing a fraud, opinions, or principles, WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY UNABRIDGED 647 (2d. ed.1970), and not to a physical object such as a person's genitals. A different edition of Merriam–Webster's dictionary separately defines "indecent exposure" as the "intentional exposure of part of one's body (as the genitals) in a place where such exposure is likely to be an offense against the generally accepted standards of decency in a community." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 1147 (1993). Furthermore, another dictionary defines "expose" as "to exhibit one's body, esp. one's genitals, *publicly* in an immodest or exhibitionistic manner," RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 682 (2d. ed.2001) (emphasis added), which undermines the State's position that physical presence is not required to indecently expose oneself. Therefore, resorting to the dictionary in this case provides little support for the State's position.

Another rule of statutory construction is applicable in this case. Where a statute uses words which have a definite and well known meaning at common law, there is a presumption that such words are used in the sense in which they were understood at common law, unless it clearly appears that the legislature did not intend for such a construction to apply. *State v. Duggar,* 806 S.W.2d 407, 408 (Mo. banc 1991). The word "expose," in the context of the common law offense of indecent exposure, required a "willful and intentional exposure

---

1. Section 566.083 was enacted in 1997. There are few appellate decisions dealing with this statute, none of which address how the term "expose" is to be construed.

of the private parts ... committed in a public place or a place open to view of the public at large, or under circumstances where anyone present is likely to be offended by it." 50 AM.JUR. 2d *Lewdness, Indecency, and Obscenity* § 17 (1995) (citations omitted). Therefore, the common law required the exposure to occur in the actual presence of the victim or in public.

In Missouri, earlier statutes prohibiting indecent exposure, seemingly consistent with the common law, required actual perception of the exposure or the exposure be committed in public whereby others could witness the act. *State v. Parker,* 738 S.W.2d 566, 569 (Mo.App.1987). The State has conceded that the crime for which Bouse was convicted is essentially an offense of indecent exposure to a child. The fact that indecent exposure at common law had a well-defined meaning weighs against the State's position, since this court must presume that the legislature enacted this statute with the common law meaning of indecent exposure in mind.[2]

The State, however, attempts to buttress its position by citing a different statute that punishes sexual misconduct in the second degree. That statute states:

A person commits the crime of sexual misconduct in the second degree if he:

(1) Exposes his genitals under circumstances in which he knows that his conduct is likely to cause affront or alarm; or

(2) Has sexual contact in the presence of a third person or persons under circumstances in which he knows

that such conduct is likely to cause affront or alarm.

§ 566.093. The State argues that the "in the presence" language in the second subsection of the statute indicates that when the legislature used the term "expose" without a presence requirement in the first subsection it did not intend to impose such a requirement. Therefore, the State argues, the legislature would have included an explicit presence requirement in the statute prohibiting sexual misconduct involving a minor if it had in fact wanted to do so.

However, the "affront or alarm" language implies the presence of another person. *Parker,* 738 S.W.2d at 569 ("An act of exposure is not likely to affront decent sensibilities or cause alarm if it is conducted in seclusion away from all possibility of detection."). It would be surplusage to use "in the presence" with "affront or alarm," since the latter language presupposes the presence of another person. Therefore, the fact that the legislature excluded a presence requirement in the first subsection of Section 566.093 does not necessarily indicate that the legislature intended that presence not be required in that statute or in the statute for which Bouse was convicted.

Although Bouse's conduct was reprehensible, this court cannot say that his actions fall within the ambit of Section 566.083. Furthermore, this is not a situation where there is a gap in the law that needs to be addressed. To the contrary, Bouse could have been charged with attempting to furnish pornographic materials to minors.[3] It

---

2. The State does not argue that the General Assembly intended, in view of the fact that the statute is designed expressly for the protection of children, to use "exposure" in a broader sense than was applicable under the common law of indecent exposure.

3. At oral argument, the State conceded that Bouse could have been charged and convicted of attempting to furnish pornography to a minor. § 573.040. That statute states:

A person commits the crime of furnishing pornographic material to minors if, knowing its content and character, he or she:

is true that the State may proceed under any applicable statute when multiple statutes prohibit the same conduct. *State v. Patterson,* 849 S.W.2d 153, 155–56 (Mo. App.1993). However, this assumes that there is more than one statute that contemplates Bouse's conduct. The fact that there is already an existing criminal statute that clearly contemplates this type of scenario is an indication that the legislature did not intend for Section 566.083 to apply here.

Virginia is the only jurisdiction to have previously decided a similar issue. In *Brooker v. Commonwealth,* 41 Va.App. 609, 587 S.E.2d 732 (2003), the appellant's conviction for attempting to take indecent liberties with a child[4] was affirmed where the appellant "exposed" himself over the Internet to an undercover law enforcement official posing as a twelve-year-old girl.[5] The Virginia court's decision was based on the definition of "expose" found in a dictionary. *Id.* at 735–36. However, this court is not convinced that resorting to the dictionary definition of expose would necessarily support the State's position. *See*

*supra.* Therefore, this court refuses to follow the reasoning found in *Brooker.*

Although Bouse's conduct could be denounced as attempting to furnish pornography to a minor that does not mean that his conduct was sufficient to establish attempt liability for sexual misconduct involving a child as set out in Section 566.083. Before criminal penalties may be imposed, there must be a degree of certainty that the statute was intended to prohibit the defendant's conduct. The fact that there is a reasonable debate as to whether the statutory language contemplated Bouse's actions illustrates the lack of certainty here. Because this court is constrained by the rule of lenity, it cannot be said that, by sending the pictures, Bouse attempted to violate Section 566.083.

Despite the assertions that a failure to agree with the majority opinion somehow reflects a lack of ability to properly use the dictionary, an inability to properly construe or divine the intent of the legislature, and an inability to properly follow an

(1) *Furnishes* any *material pornographic* for minors, knowing that the person to whom it is furnished is a minor or acting in reckless disregard of the likelihood that such person is a minor; or

(2) Produces, presents, directs or participates in any performance pornographic for minors that is furnished to a minor knowing that any person viewing such performance is a minor or acting in reckless disregard of the likelihood that a minor is viewing the performance; or

(3) Furnishes, produces, presents, directs, participates in any performance or otherwise *makes available material* that is *pornographic* for minors *via* computer, electronic transfer, *Internet* or computer network if the person made the matter available to a specific individual known by the defendant to be a minor. (emphasis added)

**4.** The Virginia statute states: "Any person eighteen years of age or over, who, with las-

civious intent, shall knowingly and intentionally ... [e]xpose his or her sexual or genital parts to any child [under the age of fourteen shall be guilty of a Class 5 felony]." Va.Code Ann. § 18.2–370 (1996).

**5.** Brooker had three online conversations with the detective posing as a minor. During the first conversation, Brooker sent two photographs of his genitals. During the second conversation, Brooker removed his pants and transmitted live pictures of himself, exposing his erect penis, via a web camera. During the third conversation, Brooker removed his clothing and again transmitted live images of his penis. Brooker was only convicted of two counts of attempting to take indecent liberties with a child, both counts stemming from the live images he transmitted via web camera. However, it is interesting to note that Brooker was not convicted for the same crime for sending the photographs during the first conversation.

interpretation of a "sister-state," the fact remains: What is at stake here is the application of a criminal law. Someone's liberty will be restrained. Instead of a misdemeanor conviction under a statute that clearly describes the underlying facts, the accused here faces a felony conviction under a statute that could not apply without reading the words, "or photographs of the person's genitals," into the statute. The rule of lenity was not built on the premise the defendant is a good person or is blameless for uncivilized conduct. The rule of lenity cannot be easily brushed aside because no one condones the accused's conduct. If the legislature wants to make a felony of the taking a picture of one's genitals and transmitting that picture over the Internet to a person under the age of fourteen, then it can clearly write such a statute.

